UNITED STATES, Appellee

v

MANARD A. MASEMER, JR., Technical Sergeant, U. S. Air Force, Appellant

19 USCMA 366, 41 CMR 366

*William H. Quasha, Esquire, Colonel Bertram Jacobson,* and *Major John T. Dorman* were on the pleadings for Appellant, Accused.

*Colonel James M. Bumgarner* was on the pleadings for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

Plagued by the constant theft of Government property at Clark Air Base, Republic of the Philippines, the Office of Special Investigations enlisted the aid of Sergeant Greenwald, a confessed thief and willing informer. Through a Filipino accomplice he met other Philippine Nationals who supplied a list of desired property. Later, he was introduced to Sergeant Wetzel, a security policeman, and the two talked about ways to move material off the base. To advance their plans, a meeting was then arranged between Greenwald and the appellant. According to the former, the appellant agreed to furnish his car to transport stolen electron tubes and Thermapaper and to make certain that Sergeant Wetzel could drive through the post gate. If a "crime stop"—a procedure causing cars to be stopped at the gate and searched—was initiated, Masemer was to have it called off.

On December 17, 1968, Greenwald drove a Government vehicle to a post dining hall parking lot and there transferred to the appellant's car three boxes of electron tubes and two boxes of Thermapaper that had been supplied him by the OSI. Wetzel was to drive the car through "Clarkview" Gate "[W]here Sergeant Masemer was supposed to be." Informed of this transfer, OSI operators followed Wetzel through the post. When he reached the gate his way was blocked, he was seized, the car searched, and the boxes taken. The appellant countermanded a "crime stop" alert that was initiated to apply to an automobile of the same description and license number as the one Wetzel was driving.

On this same day the appellant was interrogated by members of the OSI, and an oral statement was taken. Counsel was not then present. Masemer told his interrogator that he was aware Sergeant Wetzel had borrowed his car to obtain food from the dining hall for a squadron party that would be attended by approximately one hundred and twenty-five persons. Because of the large quantity involved, the food was to be stored in either the Town Patrol refrigerator or in his private freezer at home. Believing that food was in the trunk of his car, he ended the "crime stop." He denied knowing Greenwald, or that electron tubes and Thermapaper were in the vehicle.

Queried about the warning first given the appellant, the interrogator testified, in part:

". . . I advised him that any statement he might make could be used as evidence against him in a trial by court-martial, or in a judicial or administrative proceeding. I advised him he did not have to make any statement. I further advised him of his right to have legal counsel present; that he could obtain legal counsel of his own choice or, if he couldn't afford to do this, that the Air Force would provide legal counsel without cost to him. He said he understood."

The record does not show specifically that accused was asked if he wanted counsel or that he gave a negative reply.

Relying primarily upon Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), defense counsel

urge that the oral statement was erroneously admitted because prosecution failed to show that accused made a knowing and intelligent waiver of his right to counsel, and that in the absence of such a display, admission of the statement was prejudicially erroneous.

Government counters with several arguments, but, for the purpose of this case, we need look only to the contention that the pretrial statement was an essential part of the defense and that counsel wanted it before the court to buttress Masemer's own trial testimony. Cf. paragraph 153*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). The admissibility of the challenged pretrial statement is sustainable on this ground even if the warning were inadequate.

During the trial proper the appellant testified on the merits. He told the court that on December 1, 1968, he had been promoted to technical sergeant and had been transferred from Town Patrol to the "base proper." While in town he had received information concerning the removal of supplies that involved security patrolmen. After Masemer's reassignment to base, Sergeant Wetzel was to replace him as a contact for the informers in town. He also asked Wetzel, who had mess hall contacts, to get food for a party.

Masemer stated that in December he had met Greenwald, who talked about having "stuff stashed behind the Supply complex" and of moving goods on and off base. The appellant declared that he played along with Greenwald in order to obtain the latter's confidence and to secure more information. Masemer maintained that he thought food was to be taken off the post on the night in question. He denied discussing a "crime stop" with Greenwald or entering into a conspiracy or an attempt to steal "tubes and paper" or other Government property from Clark Air Base.

Miranda v Arizona, supra, prohibits use of exculpatory and inculpatory statements without a showing of warning of right to counsel and a waiver of this right. Despite a defective warning to an accused, however, this Court

unanimously declared in United States v Gustafson, 17 USCMA 150, 151–152, 37 CMR 414 (1967):

". . . The burden is on the United States to establish compliance with *Miranda* and *Tempia*, both supra, beyond a reasonable doubt, and absence of objection thereto does not excuse its failure to prove a proper warning. United States v Smith, 15 USCMA 416, 35 CMR 388. *Nevertheless, accused may consent to receipt of the evidence. United States v Smith, supra; United States v Bryson, 3 USCMA 329, 12 CMR 85;* Manual for Courts-Martial, United States, 1951, paragraph 140*a*. Here, he clearly did so." [Emphasis supplied.]

Gustafson entered a plea of not guilty to larceny, one of two offenses charged against him. During the trial, following receipt of oral pretrial statements without defense objection, counsel for Gustafson actively cross-examined prosecution's witness to bring out even more of the details. Exculpatory in nature, this evidence formed the "basis for accused's claim of losing the property he was alleged to have stolen" (17 USCMA, at page 152) and of defense counsel's final argument that Gustafson was innocent of larceny.

Here there is enough similarity for us to apply the *Gustafson* rule. The appellant's pretrial statement was admitted into evidence without objection by the defense. Cross-examination of the OSI agent, though brief, emphasized the size of the planned party and the appellant's belief that food was being carried in his car. Masemer's in-court testimony is consistent with and is complemented by the earlier statement. Each reinforces the other. For this reason, we believe the defense "consent[ed] to receipt of the evidence." United States v Gustafson, supra, at page 152; United States v Schell, 18 USCMA 410, 40 CMR 122 (1969); cf. United States v Kaiser, 19 USCMA 104, 41 CMR 104 (1969).

In these circumstances, the statement contained nothing that caused the ap-

pellant to testify in order to explain it. Both his out-of-court and in-court utterances were beneficial in that they contradicted the Government's case and established a defense. That Masemer would not have offered an in-court explanation of his actions except for the out-of-court statement is conjectural. But this area needs no further development, for United States v Bearchild, 17 USCMA 598, 38 CMR 396 (1968), does not govern the results of this case. That case, we said in United States v Hurt, 19 USCMA 206, 41 CMR 206 (1970), is not to be so broadly construed as to deprive an accused of a defense. Application of Bearchild here would have that effect, and that case was hardly intended to cause this result. United States v Hurt, supra. Accordingly, the decision of the Court of Military Review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

The absence of an objection by trial defense counsel does not relieve the Government of its burden to demonstrate, *on the record,* that a *proper warning* was given an accused as to his right to silence and right to counsel (Article 31, Uniform Code of Military Justice, 10 USC § 831; Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966); United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967)) as a predicate for the introduction into evidence for a pretrial statement. United States v Gustafson, 17 USCMA 150, 37 CMR 414 (1967). And where, despite a defective warning, the statement is admitted in evidence and the accused subsequently testifies, *"the Government must show that its illegal action did not induce his testimony."* (Emphasis supplied.) Harrison v United States, 392 US 219, 225, 20 L Ed 2d 1047, 1053, 88 S Ct 2008 (1968); United States v Bearchild, 17 USCMA 598, 38 CMR 396 (1968); United States v Hurt, 19 USCMA 206, 41 CMR 206 (1970).

In the case at bar, the record fails to reflect that the accused was asked if he wanted counsel or that he gave a negative reply. That this was an insufficient warning cannot be denied. Miranda v Arizona and United States v Tempia, both supra. See also United States v Bearchild, supra, and cases cited at pages 600 and 601. As the Supreme Court stated in Miranda, 384 US, at page 475:

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement *could* constitute a waiver. But *a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.* A statement we made in Carnley v Cochran, 369 US 506, 516, 8 L Ed 2d 70, 77, 82 S Ct 884 (1962), is applicable here:

'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " [Emphasis supplied.]

Despite the defective advice, the statement was admitted in evidence and the accused testified on the merits. My brothers, citing United States v Gustafson, supra, hold that since the accused's testimony was consistent with and was complemented by the pretrial statement, that the defense thereby consented to the receipt of the Government's illegally obtained evidence. This holding, however, overlooks the fact that Gustafson was decided before Bearchild. Bearchild was mainly concerned with an earlier ruling in United States v Trojanowski, 5 USCMA 305, 17 CMR 305 (1954), that a judicial confession removed the spectre of prejudice arising from the admission of a coerced pretrial statement. Since Bearchild, Trojanowski is no longer the law of this Court.

My brothers' determination that the pretrial "statement contained nothing that caused the appellant to testify in

**369**

order to explain it," ignores the following plain language of *Bearchild:*

"Contrary to the argument of appellate Government counsel in this case, we are not now merely concerned with the testing of the evidence for prejudice. The demands of *Harrison* are more. Above and beyond the arraying of evidentiary matter, the Government is called upon to *affirmatively show* 'that its illegal action did not induce his testimony.' Indeed, it must dispel the *inference* that no testimonial utterance would have been made had not prosecution already 'spread the petitioner's confessions before the jury.' (36 U. S. Law Week, at page 4550.) It makes no difference, under such a measurement, that not one scintilla of evidence indicates accused was motivated to testify by the admission of his pretrial revelations or that his trial presentation was no more than a reproduction of what he had earlier revealed to interrogating agents. The simple fact of the matter is that the Government may not satisfy the requirements of *Harrison* by standing on a barren record. Instead they must affirmatively demonstrate the existence of a hiatus—a lack of causal relationship—between that which is illegal and that which would otherwise be tainted thereby.

"There being no such showing in this case, we necessarily conclude that Bearchild's in-court statement cannot be used to cure the error arising from the use of his concededly inadmissible pretrial statement. Reversal must follow." [*Id.*, at page 603.]

See also United States v Hurt, supra.

Since in this case the Government has failed to sustain its burden of *showing on the record* that the accused did not desire counsel and that his testimony was not the product of the admission in evidence of the illegally obtained confession, I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered. United States v Bearchild and United States v Hurt, both supra.