UNITED STATES

v.

**Willie J. ANDERSON, 218 62 9290**
**Private U. S. Marine Corps.**

**NCM 74 2418.**

U. S. Navy Court of Military Review.

22 Aug. 1975.

LT Walter A. Smith, Jr., JAGC, USNR, Appellate Defense Counsel.

LT John H. Poag, JAGC, USNR, Appellate Government Counsel.

## DECISION

FULTON, Judge:

Appellant contends he was prejudiced as follows:

### I

APPELLANT'S UNDISPUTED TESTIMONY (60–61) DEMONSTRATES THAT HE ATTEMPTED TO SURRENDER HIMSELF ON THE FIRST DAY OF THE ABSENCE ALLEGED IN CHARGE II, SPECIFICATION 2, *SEE UNITED STATES V. RAYMO*, 23 U.S.C. M.A. 408, 50 C.M.R. 290, 1 M.J. 31 (1975), AND THEREBY BECAME IMMEDIATELY AVAILABLE TO BE TAKEN INTO CUSTODY BY MILITARY AUTHORITIES. *CF. UNITED STATES V. LANPHEAR*, 23 U.S.C.M.A. 338, 341, 49 C.M.R. 742 (1975).

### II

DURING AN OTHERWISE LAWFUL SEARCH, AND IN VIOLATION OF ARTICLE 31(b), INVESTIGATING AGENTS SOLICITED FROM APPEL-

LANT STATEMENTS OF IDENTIFICATION AND OWNERSHIP WHICH WERE USED TO CONNECT HIM WITH CERTAIN INCRIMINATING REAL EVIDENCE UNCOVERED IN THE SEARCH. *UNITED STATES V. BRADLEY*, 74 1413, 50 C.M.R. 608, 615 (N.C.M.R. 1975); *SEE UNITED STATES V. HOLMES*, 6 U.S.C.M.A. 151, 19 C.M.R. 277 (1955); *UNITED STATES V. TAYLOR*, 5 U.S.C.M.A. 178, 17 C.M.R. 178 (1954).

### III

THE GOVERNMENT DID NOT PROVE, BEYOND A REASONABLE DOUBT, THAT STAFF SERGEANT DUGGAN WAS ACTING IN THE EXECUTION OF HIS OFFICE AND WAS, AT THE TIME OF THE OFFENSE ALLEGED IN ADDITIONAL CHARGE I, SPECIFICATION 1, ENTITLED TO THE RESPECT OTHERWISE DUE A NONCOMMISSIONED OFFICER.

### IV

IN DEROGATION OF THE POLICY OF SECTION 117, JAG MANUAL, THE CONVENING AUTHORITY SET OUT IN HIS ACTION, AND THEREFORE PRESUMABLY CONSIDERED, *CF. UNITED STATES V. WILSON*, 74 2567 (N.C.M.R. 10 DECEMBER 1974), SEVERAL PRIOR NONJUDICIAL PUNISHMENTS IMPOSED UPON APPELLANT FOR OFFENSES OCCURRING MORE THAN TWO YEARS PRIOR TO THE LAST OF HIS CURRENT OFFENSES.

We believe the errors assigned lack merit but find the staff judge advocate's review deficient on the speedy trial issue.

Appellant was tried by special court-martial on 8 February 1974 and convicted of possession of marijuana, unauthorized absence, and disrespect to a noncommissioned officer (two specifications) in violation of Articles 92, 86 and 91, UCMJ, 10 U.S.C. §§ 892, 886, 891. The sentence approved below provides for a bad conduct discharge, confinement at hard labor for three months, and forfeiture of $150 pay per month for four months.

### I

### ABSENCE TERMINATION

All parties agree that the appellant was not at his duty station on 17 September 1973, the first day of the alleged absence. Appellant contends he surrendered himself that date.

Appellant testified he made several telephone calls from Baltimore on the day his unauthorized absence commenced. He called Captain Davis who told him he was supposed "to be back down here on the Air Station." (R. 60.) Appellant called the Red Cross, reserve, and the recruiter. The next night appellant went to the local civilian police station to turn in, but the police told him the MP's had returned to Fort Holabird at 1630 or 1700. Appellant returned home and called Fort Meade, and was informed "the best thing to do was to turn myself into Fort Holibird." (R. 61.) The next day appellant surrendered at Fort Holabird.

■ We believe appellant did not submit himself to military control on the first day of his absence. Unlike *United States v. Kitchen*, 5 U.S.C.M.A. 451, 18 C.M.R. 165 (1955) this appellant did not personally appear at the recruiting office. Unlike *United States v. Lanphear*, 23 U.S.C.M.A. 338, 49 C.M.R. 742 (1945) our appellant was not held by civil authorities nor were military authorities notified that he was immediately available to be taken into custody. *United States v. Raymo*, 23 U.S.C.M.A. 408, 50 C.M.R. 290, 1 M.J. 31 (1975) may be distinguished since this appellant did not go in person to the Selective Service Board. No Military officer gave him an order with which he complied to report to the office of another law enforcement agency. Instead the facts in this case are similar to *United States v. Acemoglu*, 21 U.S.C.M.A. 561, 45 C.M.R. 335 (1972). There the accused made his contact by telephone with the military attache, and the Court of Military Appeals found that although he subsequently visited the American embassy there was no "submission" to military control. We likewise

find that appellant never submitted himself to military control until he surrendered at Fort Holabird on 20 September 1973.

As Judge Milano stated in *United States v. Russell*, No. 73 1602 (N.C.M.R. 24 September 73):

> We are constrained to note that according to the appellant's reasoning an individual could absent himself indefinitely but should he telephone his unit daily he would never be in an unauthorized absence status except for the period of time it took him to locate a telephone on the first day.

The assignment lacks merit.

## II

### SEARCH

■ Appellant consented to a search of his wall locker and living area. Appellant now complains that he was not properly warned that the physical acts of pointing out his bunk and locker were protected by Article 31, UCMJ, 10 U.S.C. § 831. Under the circumstances of this case we consider appellant's consent was a neutral act and was not incriminatory within the meaning of Article 31, UCMJ. *United States v. Insani*, 10 U.S.C.M.A. 519, 28 C.M.R. 85 (1959). Rather appellant's pointing out of his wall locker and bunk is convoluted with other evidence in determining the issue of actual consent, as opposed to submission to police authority. *See United States v. Rushing*, 17 U.S.C.M.A. 298, 38 C.M.R. 96 (1967). We believe defense counsel's failure to object to the evidence that accused pointed out his locker and bunk to be persuasive evidence that he did not consider the introduction egregious error. Instead it was a matter of deliberate trial strategy. Defense was based on the fact that the locker and bunk were not assigned to appellant. *Cf. U. S. v. Webb*, 10 U.S.C.M.A. 422, 27 C.M.R. 496 (1959);[1] *United States v. Dupree*, 1 U.S.C. M.A. 665, 5 C.M.R. 93 (1952).

There is nothing to indicate that waiver would here result in a miscarriage of justice or deprive appellant of a fair trial. *United States v. Dial*, 9 U.S.C.M.A. 700, 26 C.M.R. 480 (1958). *Cf. United States v. Masemer*, 19 U.S.C.M.A. 366, 41 C.M.R. 366 (1970). Obviously the consent form, Prosecution Exhibit 2, required further information to accurately fix the exact location of appellant's "wall locker" and "living area." The form provided authorization:

> "to conduct a complete search of my (residence) (wall locker) Foot locker, living Area, located at 2nd Deck, N. Wing, MCAS, Beaufort, S. C. I authorize the above listed personnel to take from the area searched any letters, papers, materials, or other property which they may desire. This search may be conducted on 0510, 30 May 73.
>
> This written permission is being given by me to the above named personnel voluntarily and without threats or promises of any kind."
>
> /s/ *Willie J. Anderson*

Query; would it have been legally objectionable for appellant to have written the exact location of his wall locker and bunk on the form? We think not and see no difference from him physically writing the location on the consent form or physically indicating it later contemporaneous with the search.

The government argued that the evidence in the locker and bunk was consistent with the defense counsel's trial strategy that he had nothing to hide. Trial defense counsel wanted the items found in the bunk and in the locker to come into evidence because he had evidence that neither the locker nor the bunk belonged to the appellant. That this evidence was not believed by the military judge was a result within the risk of letting the evidence in without objection. Stated another way the matter was "intentionally . . . left in dispute at the trial level in order to gain a tactical

---

1. *Judge* Ferguson apparently would not have dissented in *Webb, supra*, had he found such a deliberate strategy; ". . . Neither does the record warrant the inference that, when de-fense counsel failed to [object] he did so in pursuance of an affirmative, deliberate, and consciously designed tactical plan . . ." 10 U.S.C.M.A. 426, 27 C.M.R. 500.

advantage either at trial or subsequently on appeal." *United States v. Heflin*, 23 U.S. C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975), Slip opinion page 5. There was consent in the sense of paragraph 154d, MCM 1969 (Rev.) and waiver under the teachings of *United States v. Masemer, supra; United States v. Schell*, 18 U.S.C.M.A. 410, 40 C.M.R. 122 (1969); and *United States v. Gustafson*, U.S.C.M.A. 150, 37 C.M.R. 414 (1967). We agree with this rationale and conclude the assignment lacks merit.

We have examined assignments of error III and IV and the government's reply thereto. The assignments lack merit.

## III

### REVIEW

We turn to the staff judge advocate's discussion of the speedy trial issue. The staff judge advocate advised the supervisory authority:

D. THE LAW. The essence of the law of denial of speedy trial is that an accused is entitled to a dismissal of charges where the facts show a deliberate, vexatious, or oppressive delay on the part of the government or where the facts demonstrate an unintentional delay which harms or prejudices the accused (NCM 1969 (Rev.), para. 216(c). The period of time for which the government must account begins when the accused is subjected to pretrial restraint or when charges are preferred. *Normally if no restraint is imposed, speed of trial is governed by the statute of limitations unless the delay has been too unreasonable or has harmed the defense. . . .* SJA Review p. 5. [Emphasis added]

The "Discussion" portion concluded:

. . . *Looking at the whole of the chronology, only the statute of limitations (UCMJ, Art. 43) initially compelled action be taken.* Instead of court-martial, the command apparently went an administrative route. When that failed or was put aside and trial was pursued, the government proceeded to trial with reasonable dispatch in light of the accused's request

for further administrative proceedings. . . . SJA Review p. 6. [Emphasis added]

In *United States v. Amundson*, 48 C.M.R. 914 (N.C.M.R.1974) affirmed 23 U.S.C.M.A. 308, 49 C.M.R. 598, Judge Evans said concerning speedy trial:

"The record is to be examined to determine whether there has been a purposeful or oppressive design on the part of the Government to delay the trial and whether the Government has proceeded with reasonable diligence in bringing the charges to trial". [citations omitted]

This we understand to be the test for speedy trial absent the 90 day *Burton* presumption, *United States v. Burton*, 21 U.S. C.M.A. 112, 44 C.M.R. 166 (1971). The Uniform Code of Military Justice "demands a more prompt performance by the Government in bringing the accused to trial" than does the Sixth Amendment to the Constitution. *United States v. Marshall*, 22 U.S.C. M.A. 431 at 433, 47 C.M.R. 409 at 411 (1973), *United States v. Barnes*, No. 74 3412 (16 April 75).

While the statements in the staff judge advocate's review quoted above may be subject to more than one interpretation, we believe it conveys the idea that the two year statute of limitations, Article 43, UCMJ, "governed" the speedy trial issue and that only the statute "initially compelled action be taken." The statute and the speedy trial rule are like apples and oranges. It is considered inappropriate to discuss the two year statute of limitations where the standard is purposeful or oppressive design to delay and due diligence in bringing a case to trial.

■ We conclude there was a fair risk the supervisory authority was misled into thinking that there was no serious speedy trial issue if trial were held within the two year period. The SJA review is prejudicially deficient.

The record of trial is returned to the Judge Advocate General for another review and action pursuant to Article 65, UCMJ, or such other action as deemed appropriate.

Senior Judge EVANS and Judge MALLERY concur.