**UNITED STATES, Appellee,**

v.

**Specialist Alton L. JENKINS, United States Army, Appellant.**

**ARMY 20010327.**

U.S. Army Court of Criminal Appeals.

14 April 2004.

---

For Appellant: Captain Charles A. Kuhfahl, Jr., JA (argued); Major Jeanette K. Stone, JA; Captain Mary C. Vergona, JA (on brief); Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Captain Charles A. Kuhfahl, Jr., JA (on specified issues).

For Appellee: Captain Ryan R. McKinstry, JA (argued); Lieutenant Colonel Margaret B. Baines, JA (on brief); Lieutenant Colonel Margaret B. Baines, JA; Major Theresa A. Gallagher, JA; Captain Ryan R. McKinstry, JA (on specified issues); Colonel Lauren B. Leeker, JA.

Before HARVEY, Senior Judge, BARTO, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

HARVEY, Senior Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of conspiracy to commit assault and aggravated assault in which grievous bodily harm is intentionally inflicted, in violation of Articles 81 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 928 [hereinafter UCMJ]. Appellant was sentenced to a dishonorable discharge, confinement for 5 years and 169 days, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved only so much of the sentence as provides for a dishonorable discharge, confinement for 5 years and 79 days, forfeiture of all pay and allowances, and reduction to Private E1. We note that the initial action failed to credit appellant for 169 days of pretrial confinement served.[1] The case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

The military judge's failure to provide defense requested instructions on accident[2] and "withdrawal as reviving right to self-defense"[3] was prejudicial error. We will set aside the finding of guilty of aggravated assault (Charge I and its Specification) and the sentence in our decretal paragraph.

## FACTS

Because appellant's testimony provides the primary support for the defense requested instructions, we recount appellant's testimony as it pertains to these issues. In October 2000, appellant became involved in a dispute with Specialist (SPC) Taite over who had broken SPC Taite's car window. Appellant denied breaking SPC Taite's window. In mid-October 2000, appellant received three death threats, which he believed came from SPC Taite and SPC Keys.

On 16 October 2000, appellant, Sergeant (SGT) Eldridge, and five other friends drove to SPC Taite's barracks to resolve the problem. Appellant's friends went along to pro-

---

1. *See* Army Reg. 27–10, Legal Services: Military Justice [hereinafter AR 27–10], para. 5–28a (24 June 1996) (sentence credits must be included in initial action). AR 27–10's requirements remain in effect in the current version of AR 27–10 unless stated otherwise. Appellant's result of trial correctly indicates that he served 169 days in pretrial confinement. *See* AR 27–10, para. 5–27a (result of trial informs confinement officials of findings, adjudged sentence, and confinement credits). In the absence of any request for a remedy by appellate defense counsel, we presume that appellant received 169 days of confinement credit.

2. *See* Dep't of Army Pam. 27–9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 5–4 (1 Apr. 2001).

3. This instruction is provided in the Benchbook, para. 5–2–6, Note 7, which states:

> Even if you find that the accused (intentionally provoked an attack upon (himself) (herself)) (voluntarily engaged in mutual fighting), if the accused later withdrew in good faith and indicated to (his)(her) adversary a desire for peace, by words or actions or both, and if (*state the name of the victim*) (followed the accused and) revived the (conflict) (fight), then the accused was no longer (voluntarily engaged in mutual fighting) (provoking an attack) and was entitled to act in self-defense.
> If you have a reasonable doubt that the accused remained (a person provoking an attack) (a voluntary mutual combatant) at the time of the offense, you must find that the accused did not lose the right to act in self-defense, and, then, you must decide if the accused acted in self-defense.

tect appellant. They parked and then walked about 250 meters to SPC Taite's barracks, where a noisy confrontation occurred. The staff duty noncommissioned officer ordered appellant and his friends to leave the area. Appellant and his friends complied by walking back to their parked cars.

Just before they got to their cars, SPC Taite, SPC Keys, and about thirteen of SPC Taite's supporters approached appellant's group. Specialist Keys told his group to stop the cars from leaving, and the cars belonging to appellant's group were surrounded. Specialist Keys challenged appellant to a fight, but appellant said he did not want to fight. Specialist Keys then began to argue with SGT Eldridge and a fight between the two ensued. Specialist Taite and his supporters held appellant's group back to keep them from stopping the fight. Sergeant Eldridge was soon lying unconscious on the ground, and SPC Keys was on top of SGT Eldridge punching him in the face.[4]

Before going to SPC Taite's barracks, appellant had loaded eight rounds into his .45 caliber pistol.[5] Appellant gave his pistol to a friend to hold a few minutes before the shooting. During the fight between SPC Keys and SGT· Eldridge, appellant obtained his pistol back from his friend. Appellant fired the weapon into the air twice at a 45 degree angle. Appellant said that as he was lowering his pistol to put it away, it discharged again, shooting Private First Class (PFC) Davis.[6]

Appellant explained that the reason he fired his pistol was because he wanted to

disperse the crowd to help SGT Eldridge, who he believed was going to be killed. There was no evidence presented of any animosity between appellant and PFC Davis, who was both a member of appellant's battalion and a member of SPC Taite's group. Appellant denied that he pointed the weapon at SPC Taite's group, and he denied that he intended to shoot PFC Davis. Appellant repeatedly contended that his pistol fired accidentally[7] and PFC Davis' injuries were unintentional.

Before deliberations on findings, trial defense counsel asked the military judge for an accident instruction, asserting that appellant's display and firing of his pistol was in defense of another, that is, SGT Eldridge. Trial defense counsel asserted that appellant acted with due care and without negligence. The military judge determined that appellant acted with "wanton and reckless conduct," and at least simple negligence, when he fired his weapon into the air in a garrison environment, and declined to give the accident instruction.

During findings argument to the members, trial defense counsel argued that the injury to PFC Davis was an unintentional "accident." Trial counsel objected to the use of the term, "accident." In an Article 39(a), UCMJ, session, counsel and the military judge discussed the propriety of trial defense counsel's argument after the military judge's ruling denying an accident instruction. The military judge then instructed the members, without defense objection, as follows:

---

4. Sergeant Eldridge was hospitalized three weeks for his injuries, which included orbital face fractures requiring placement of three metal plates in his head.

5. Appellant owned the pistol for three or four months prior to the shooting, but he had never fired it before. He had no experience firing handguns. Appellant's pistol had operational safety features and a trigger pull of three and one-half pounds, which is considered normal.

6. Private First Class Davis was standing about fifteen feet away from appellant at the time of the shooting. The bullet entered PFC Davis' arm, passed through his abdomen, and resulted in removal of one kidney.

7. "There is a thin, but distinct line between the 'accident defense,' an absolute defense, and an 'accident' as that word is ordinarily understood by lay persons. Accident is 'an unforeseen and unplanned event or circumstance.'" *United States v. Curry*, 38 M.J. 77, 80 n. 6 (C.M.A.) (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 49 (1991)), *amended by* 39 M.J. 73 (C.M.A. 1993) (interlocutory order). Moreover, appellant's testimonial labeling of the shooting as an "accident," by itself, is not controlling. *See United States v. Ferguson*, 15 M.J. 12, 20 (C.M.A. 1983); *United States v. Redding*, 14 U.S.C.M.A. 242, 246, 34 C.M.R. 22, 26, 1963 WL 4752 (1963) (holding accident defense not raised even though victim and accused testified that injury was by accident).

Defense counsel, in his closing argument mentioned about an accident.... The law does recognize something called defense of accident, but I have determined as a matter of law defense of accident does not apply under the facts of this case. That is why I did not instruct you on the law of accident.

During closing argument, trial counsel stated that the defense "want[s] you to think it's an accident but as the judge just told you it was not an accident." Trial defense counsel objected, and the military judge responded by telling members, without elaboration, "I did not say that."

The military judge also gave, prior to findings, the "defense of another" instruction and the self-defense instruction. *See* Benchbook, paras. 5–2–6 and 5–3–1. The military judge told the members as part of the self-defense instruction, "If you are convinced beyond a reasonable doubt that [Sergeant] Eldridge voluntarily engaged in mutual fighting, then you have found that [Sergeant] Eldridge gave up the right to self-defense." Trial defense counsel requested that the military judge also give "withdrawal as reviving right to self-defense."[8] Appellant's defense counsel explained to the military judge that at the point that SGT Eldridge was unconscious and not fighting back, self-defense was revived. The military judge refused to give this instruction.

In closing argument on findings, trial counsel argued that appellant's actions were not excused by defense of another because SGT Eldridge had engaged in a mutual affray or was the aggressor. Trial counsel explained, as follows:

[I]f Sergeant Eldridge intentionally provoked an attack, or was merely a mutual combatant, then the accuse[d] could not lawfully use force on his behalf; and, just a few moments ago I explained to you why Sergeant Eldridge was a mutual combatant....

. . . .

The last part of the judge's instruction was that, if Sergeant Eldridge was an aggressor, intentionally provoked, or was just a mutual combatant, then regardless of the accused's understanding of the situation [t]here is no defense of another. The accused is not entitled to claim defense of another in that circumstance and that's exactly the case here.

The members found appellant guilty of aggravated assault in which grievous bodily harm is intentionally inflicted.

## DISCUSSION

We review the military judge's decision not to give a specific instruction and "the substance of any instructions given, 'to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. The question of whether a jury was properly instructed [is] a question of law, and thus, review is *de novo.*'" *United States v. McDonald,* 57 M.J. 18, 20 (C.A.A.F.2002) (citations omitted).

■ Affirmative or special defenses, such as accident and defense of another, do not deny that the accused has committed the objective acts constituting the charged offense. Rule for Courts–Martial [hereinafter R.C.M.] 916(a). Instead, they deny, "wholly or partially, criminal responsibility for those acts." *Id.* "The military judge is required to instruct the court-martial panel on the availability and legal requirements of an affirmative defense, if 'the record contains some evidence to which the military jury may attach credit if it so desires.'"[9] "An affir-

8. *See* Benchbook, para. 5–2–6, Note 7. The defense did not request and the military judge did not tell the members that an unexpected and unintentional injury to a third party is excused if the accused was engaging in lawful self-defense. *See United States v. Taliau,* 7 M.J. 845, 847 (A.C.M.R.1979) (reversing aggravated assault conviction for injury to an innocent bystander because when PFC Taliau threw a pipe at his attacker, he acted in self-defense). This omission was not plain error. *See United States v. Lanier,* 50 M.J. 772, 779 n. 8 (Army Ct.Crim.App.1999)

("Any instruction stressing a particular theory of the special defense must be requested by the accused or it is waived." (citing *United States v. Bull,* 3 U.S.C.M.A. 635, 637–38, 14 C.M.R. 53, 54, 1954 WL 2090 (1954))), *aff'd,* 53 M.J. 220 (C.A.A.F.2000) (summary disposition).

9. *United States v. Hibbard,* 58 M.J. 71, 72 (C.A.A.F.) (quoting *United States v. Brown,* 43 M.J. 187, 189 (C.A.A.F.1995)), *cert. denied,* 539 U.S. 928, 123 S.Ct. 2589, 156 L.Ed.2d 606 (2003); *see* R.C.M. 920(e)(3); *United States v.*

mative defense 'may be raised by evidence presented by the defense, the prosecution, or the court-martial.' " *Hibbard,* 58 M.J. at 73 (quoting R.C.M. 916(b) discussion). The accused's testimony alone may be sufficient to require an instruction on an affirmative defense.[10]

■ Trial judges should view the standard used to decide whether to give an instruction on an affirmative defense as a "mirror image" of that used to decide whether to grant a motion for a finding of not guilty. In deciding whether to direct a finding of not guilty, the military judge views the evidence "in the light most favorable to the prosecution, without an evaluation of the credibility of the witnesses." R.C.M. 917(d). Similarly, when the defense requests an instruction, "[a]ny doubt whether the evidence is sufficient to require an instruction should be resolved in favor of the accused." *United States v. Steinruck,* 11 M.J. 322, 324 (C.M.A. 1981), *cited with approval in Hibbard,* 58 M.J. at 73; *see United States v. McMonagle,* 38 M.J. 53, 58 (C.M.A.1993).

In appellant's case, the testimony of the staff duty personnel, who arrived just before the shooting and who testified that SPC Keys' beating of SGT Eldridge had ended before any shots were fired, probably influenced the military judge's decision not to provide an accident instruction. However, as Judge Ferguson admonished trial judges a quarter of a century ago:

> [I]t is an entirely human tendency to listen to the presentation of evidence or to read a record of trial, accept certain testimony and reject other, arrive at factual conclusions, and proceed thereafter to make decisions of law based upon such preconceived notions.... [However], Congress has confided the fact-finding power exclusively to the members of the court-martial. It is for them, not for the law officer or an

appellate body to sift the evidence and determine whether it chooses to believe an apparently overwhelming case presented by the United States or the single, unsupported word of the accused. To make this choice, it must be properly instructed, and, when the law officer or appellate bodies, understandably or not, invade the province of the fact finders, and deny instruction on that basis, reversal will inevitably come ... because of a failure to trust to the judgment of those solely charged with the responsibility of finding the facts and giving credibility where credibility is due.

*United States v. Thornton,* 19 U.S.C.M.A. 140, 144, 41 C.M.R. 140, 144, 1969 WL 6312 (1969) (quoting *United States v. Evans,* 17 U.S.C.M.A. 238, 242, 38 C.M.R. 36, 40, 1967 WL 4364 (1967)) (internal quotation marks omitted).

## Accident Defense [11]

■ An accident defense excuses an accused from all criminal liability and is a complete defense. *United States v. Marbury,* 56 M.J. 12, 17 n. 6 (C.A.A.F.2001) (citing R.C.M. 916(f)); *see also Curry,* 38 M.J. at 80 n. 6; *Ferguson,* 15 M.J. at 17. "Accident, while loosely called an 'affirmative defense,' is more accurately a 'substantive law defense, which negat[es] guilt by canceling out' one or more *mens rea* components." *Curry,* 38 M.J. at 80 (citation omitted). Succinctly stated, " '[a] death, injury, or other event which occurs as the unintentional and unexpected result of doing a lawful act in a lawful manner is an accident and excusable.' " *Id.* (quoting R.C.M. 916(f)). There must be "some evidence on each of these elements before the military judge is required to instruct the members on [accident]." *Ferguson,* 15 M.J. at 17; *see* Benchbook, para. 5–4.

*Davis,* 53 M.J. 202, 205 (C.A.A.F.2000); *United States v. Birdsong,* 40 M.J. 606, 609 (A.C.M.R. 1994).

10. *Ferguson,* 15 M.J. at 17; *United States v. Hurt,* 19 U.S.C.M.A. 206, 208–09, 41 C.M.R. 206, 208–09, 1970 WL 7307 (1970); *United States v. Tucker,* 17 U.S.C.M.A. 551, 554, 38 C.M.R. 349, 352, 1968 WL 5418 (1968).

11. The accident defense has existed since the common law. *See United States v. Marbury,* 50 M.J. 526, 529 n. 4 (Army Ct.Crim.App.1999) (citing COLONEL WILLIAM WINTHROP, WINTHROP'S MILITARY LAW AND PRECEDENTS 291 n.61 (2d ed.1920 reprint) (1896); 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 26–27 (1979 facsimile reprint) (1769)), *aff'd,* 56 M.J. 12 (C.A.A.F.2001).

■ First, " 'the accused [must have] engaged in an act not prohibited by law, regulation, or order,' "[12] and the lawful act must be the proximate cause of the charged injury.[13] There was no evidence presented at trial that appellant's conduct violated a regulation or general order, nor has appellate government counsel asserted that appellant's possession or discharge of a firearm while on Fort Bragg was unlawful.[14]

Second, the act causing the injury must have been performed in a " 'lawful manner ... with due care and without simple negligence.' "[15] "Simple negligence is the absence of due care for the safety of others that a reasonably prudent person would have exercised under the same or similar circumstances." *Marbury*, 50 M.J. at 529–30.[16]

" 'Third, there must be some evidence in the record of trial that this act was done without any unlawful intent.' " *Van Syoc*, 36

M.J. at 464 (quoting *Ferguson*, 15 M.J. at 17). The resulting injury at issue must have been unintended and unexpected.[17] However, the accident defense does not excuse injury resulting from a deliberate act toward another if the natural and direct consequences of the act include injury.[18]

■ We therefore find that there was some evidence of record that when appellant fired his pistol: (1) it was to prevent further injury to SGT Eldridge; (2) he showed sufficient due care that a reasonably prudent person would have exercised under the circumstances; (3) his failure to engage the pistol's safety before lowering his pistol was not so clearly negligent as to bar the accident instruction; and (4) it was unexpected that appellant's firing of his pistol twice into the air would result in injury to others. We find no evidence of record that appellant was

---

12. *United States v. Van Syoc*, 36 M.J. 461, 464 (C.M.A.1993) (quoting *Ferguson*, 15 M.J. at 17); *see United States v. Sandoval*, 4 U.S.C.M.A. 61, 67, 15 C.M.R. 61, 67, 1954 WL 2252 (1954).

13. *See United States v. Small*, 45 C.M.R. 700, 703, 1972 WL 14285 (A.C.M.R.1972) (reversing accused's conviction despite his possession of a loaded pistol in violation of a general regulation and noting that the regulatory violation was not the proximate cause of the injury).

14. See *infra* for discussion of defense of another.

15. *Van Syoc*, 36 M.J. at 464 (quoting *Ferguson*, 15 M.J. at 17); *see* R.C.M. 916(f) discussion; *United States v. Garth*, 39 C.M.R. 466, 470, 1968 WL 5111 (A.B.R.1968) ("If it is accepted that the appellant was justified in arming himself as a means of deterrent self-defense for his protection ... it must be accepted that he was lawfully utilizing the loaded weapon."). *But see United States v. Moyler*, 47 C.M.R. 82, 83, 85, 1973 WL 14663 (A.C.M.R.1973) (finding negligence and no requirement for an accident instruction where after notification of field assignment, accused carried weapon onto base camp with a magazine inserted, a round chambered, the safety off, and the selector on automatic).

16. In 1983, our superior court addressed the issue of negligence, a shooting, and the failure to give an accident instruction. In *Ferguson*, the accused pointed a loaded shotgun at his wife, who was wielding a knife, in order to scare her into desisting in her threatening conduct. The shotgun's safety was off. When she grabbed the shotgun, the shotgun went off, shooting her in the back. 15 M.J. at 17–18. Staff Sergeant Ferguson was convicted of un-

premeditated murder. *Id.* at 13. A majority of the court determined that the military judge should have granted the defense request for an accident instruction. *Id.* at 25.

17. *Curry*, 38 M.J. at 80 & n. 4; R.C.M. 916(f). *But see United States v. Pemberton*, 16 U.S.C.M.A 83, 84, 36 C.M.R. 239, 240, 1966 WL 4452 (1966) (observing that accident requires an "unexpected act, not the unexpected consequence of a deliberate act," and reversing because of confusing instructions). *Pemberton* does not mention the description of the accident defense in the version of the *Manual for Courts–Martial* then in effect, which provides that "[a] homicide which is the result of an accident or misadventure in doing a lawful act in a lawful manner ... is excusable." *Manual for Courts–Martial, United States* (1951 ed.) [hereinafter *MCM*, 1951], para. 197c. Moreover, the weight of recent military authority holds that "[t]he defense of accident arises from an unintended *consequence*." *McMonagle*, 38 M.J. at 59 (emphasis added); *see* Benchbook, para. 5–4.

18. *Compare Pemberton*, 16 U.S.C.M.A. at 84, 36 C.M.R. at 240 (holding accused's struggling with victim over a broken bottle was not directed at the victim, but rather was directed at wrestling the bottle from the victim; accordingly, the defense of accident was raised when the victim was cut), *with United States v. Femmer*, 14 U.S.C.M.A. 358, 360–61, 34 C.M.R. 138, 140–41, 1964 WL 4981 (1964) (holding accident was not raised where accused pushed victim and the victim was cut by a razor blade in the accused's hand because the injury resulted from an act intentionally directed at the victim).

engaged in unlawful conduct. We resolve our doubt about whether an instruction should be given in favor of the accused and conclude that the military judge erred when he failed to give the defense requested accident instruction. *See Hibbard,* 58 M.J. at 73.

### Defense of Another and Self-defense

■ Defense of another is a complete defense to aggravated assault, provided appellant did not use "more force than the person defended was lawfully entitled to use under the circumstances." R.C.M. 916(e)(5). One who acts in defense of another " 'stands in the shoes' " of and has no greater right than the party defended.[19] Self-defense may operate in conjunction with the accident defense to excuse an accused's act, provided that the victim's death or serious harm was the result of the accused's lawful act of self-defense. R.C.M. 916(e)(2)–(3) discussion.

"[T]here is no unqualified rule that one uses excessive force, as a matter of law and in all instances, when he resorts to a dangerous weapon to repel a fistic attack." *Regalado,* 13 U.S.C.M.A. at 484, 33 C.M.R. at 16. An accused is permitted to use deadly force in defense of another if the accused: "(1) apprehended, on reasonable grounds, that death or grievous bodily harm was about to be inflicted wrongfully on the person defended; and (2) believed that the force he used was necessary for protection of that person against death or grievous bodily harm." *Cole,* 54 M.J. at 580 (citing R.C.M. 916(e)(1)). In *Lanier,* our court explained:

> If the defended person was an aggressor, engaged in mutual combat, or provoked the attack giving rise to the accused's apprehension that force was needed to defend that person, the defense of defense of another is not available. . . .

However, if the defended person withdraws in good faith after his aggression, combat, or provocation *and before* the force, weapon, means, or assault occurred, the defense is available to the accused.

50 M.J. at 778.[20]

We conclude that when SGT Eldridge became unconscious, he ceased resistance and effectively withdrew from his mutual affray with SPC Keys. At this point, appellant was entitled to exercise self-defense on SGT Eldridge's behalf. The military judge erred when he refused to provide the defense requested instruction on "withdrawal as reviving right to self-defense." *See* Benchbook, para. 5–2–6, Note 7.

### Prejudice

"Once it is determined that a specific instruction is required but not given, the test for determining whether this constitutional error was harmless is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *McDonald,* 57 M.J. at 20 (quoting *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see also Neder v. United States,* 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (restating the test for prejudice as, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?").

Appellate government counsel assert that even if an accident instruction was required, the failure to provide this instruction was harmless beyond a reasonable doubt. Counsel explain that this is so because the guilty finding of aggravated assault in which grievous bodily harm is intentionally inflicted necessarily includes specific intent. *See MCM,* 2000, Part. IV, para. 54c(4)(b). The govern-

**19.** *United States v. Cole,* 54 M.J. 572, 581 (Army Ct.Crim.App.2000) (citing *United States v. Scott,* 40 M.J. 914, 917 (A.C.M.R.1994), *aff'd,* 42 M.J. 457 (C.A.A.F.1995), and R.C.M. 916(e)(5)); *see also United States v. Regalado,* 13 U.S.C.M.A. 480, 484–85, 33 C.M.R. 12, 16–17, 1963 WL 4805 (1963); *United States v. Hernandez,* 19 C.M.R. 822, 826, 1955 WL 3508 (A.F.B.R.1955).

**20.** *See also United States v. O'Neal,* 16 U.S.C.M.A. 33, 37, 36 C.M.R. 189, 193, 1966 WL 4443 (1966); *Rowe v. United States,* 164 U.S.

546, 554–55, 17 S.Ct. 172, 41 L.Ed. 547 (1896) (holding withdrawal raised in good faith and right of self-defense restored where accused kicked victim lightly, then stepped back and leaned against a counter); *United States v. Grover,* 485 F.2d 1039, 1042 n. 4 (D.C.Cir.1973) ("By reason of the initial aggression, the law imposes on the aggressor a duty to withdraw from the affray. But once having attempted to withdraw or retreat, the right to meet deadly force with deadly force is rekindled."); R.C.M. 916(e)(4).

ment cites to Judge Everett's concurring opinion in *Ferguson* in support of its argument:

> By finding appellant guilty of an intentional homicide [unpremeditated murder], the members necessarily concluded affirmatively that appellant 'intend[ed] to kill or inflict great bodily harm.' Under such circumstances, it is far more difficult to infer prejudice from the judge's failure to give an accident instruction than would be the case if appellant had been convicted of an unintentional homicide, such as involuntary manslaughter or negligent homicide. Where the findings reflect a failure to find intent, the risk is greater that the members did not properly focus on the possibility of accident than is present when the trier of fact has found such intent to exist.

15 M.J. at 25 (Everett, J., concurring in the result) (citations omitted).

■ We agree with the *Ferguson* majority to the extent that an appellate court should give some weight to the members' guilty finding of an intentional offense, such as aggravated assault by intentional infliction of grievous bodily harm, in the prejudicial error analysis of the failure to give an accident instruction. *See id.*; 1 PAUL H. ROBINSON, CRIMINAL LAW DEFENSES § 63 (1984). The proposition that guilty findings render instructional errors harmless in cases such as appellant's, however, must be ·viewed with great caution.

In *Van Syoc*, the Court of Military Appeals unanimously reversed a guilty finding of unpremeditated murder because the military judge failed to give a defense requested accident instruction.[21] In doing so, the court did not address the relationship between harmless error and the specific intent involved in unpremeditated murder, stating:

> We hold further that the error was prejudicial because it deprived the defense of an instruction on their theory of the case. Although the military judge properly instructed the members on the prosecution theory that they could infer appellant's intent to kill or inflict great bodily harm,

he refused to instruct on the defense theory that the baby's death was an accident and that the prosecution had the burden of proving beyond a reasonable doubt that the fatal injuries were not accidentally inflicted. Given the posture of the evidence and the theories of the parties in this case, we are not satisfied that the error was harmless.

*Van Syoc*, 36 M.J. at 465. Subsequently, our superior court in *Curry* held that the military judge committed prejudicial instructional error and addressed the argument now advocated by the government, stating:

> By informing the members that "the defense of accident does not lie in a specific intent offense," the judge effectively told the members to disregard any accident evidence with respect to the charge of striking an officer. That is a completely misleading statement of law. Because it can amount to a total refutation of the intent element, accident can be a complete defense to any specific-intent offense.

38 M.J. at 80.

■ Indeed, our superior court has never cited *Ferguson* for the government's suggested proposition. Guilty findings that show an implied rejection of the defense theory do not render harmless, per se, a failure to instruct. *See, e.g., Davis*, 53 M.J. at 205–06 (reversing involuntary manslaughter conviction because military judge failed to instruct on negligent homicide). In *United States v. Wells*, 52 M.J. 126, 131 (C.A.A.F. 1999), our superior court stated that a harmless error analysis based on implied rejection of a defense theory is "legally flawed." The members in *Wells* were instructed on unpremeditated murder; appellant was found guilty of premeditated murder. *Id.* at 127–28. The court reversed the conviction, stating that "a finding of premeditation and implied rejection of the defense's self-defense argument does not render harmless the failure of the judge to give an instruction on the lesser-included offense of voluntary manslaughter." *Id.* at 131.

---

21. Unpremeditated murder includes the following element: "That, at the time of the killing, the accused had the intent to kill or inflict great bodily harm upon a person." *MCM*, 2000, Part IV, para. 43b(2)(d).

The military judge's instruction to the members that he had ruled out accident as a legal defense in response to trial defense counsel's closing argument on findings had the effect of discouraging the members from considering the possibility of an accident or that the shooting was unintentional. Certainly in closing argument, trial counsel's remark that "the judge just told you it was not an accident" demonstrates a misunderstanding of the military judge's comment regarding accident. Two other factors also diminished the possibility that appellant's defense of another theory would be given credence by the members. First, trial counsel argued that self-defense was inapplicable because appellant was engaged in a mutual affray. Second, the military judge failed to provide the instruction "withdrawal as reviving right to self-defense."

Long ago, Judge Ferguson on our superior court "strongly recommend[ed]" that all conflicts should be submitted to the members "with proper instructions on the elements of lesser crimes and affirmative defenses thereby raised. Needless reversals will thereby be avoided, and the accused will receive his proper day in court, with justice under our system being done to all concerned." *Evans*, 17 U.S.C.M.A. at 242, 38 C.M.R. at 40. That recommendation is still good advice to counsel and judges wrestling with these same issues today.

■ We hold that the military judge's multiple instructional errors, compounded by trial counsel's argument, cumulatively resulted in prejudicial error. *See United States v. Dollente*, 45 M.J. 234, 242 (C.A.A.F.1996) (holding appellate court can order rehearing based on accumulation of errors not individually reversible). We find that the remaining assignments of error are mooted by our decision.[22]

The findings of guilty of Charge I and its Specification are set aside and Charge I and its Specification are dismissed without prejudice. The remaining findings of guilty are affirmed. The sentence is set aside. A rehearing on Charge I and its Specification and the sentence may be ordered by the same or a different convening authority. If the convening authority determines that a rehearing on Charge I and its Specification is not practicable, he may order a rehearing on sentence only. If the convening authority determines that a rehearing on sentence is likewise impracticable, a sentence of no punishment may be approved.

Judge BARTO and Judge SCHENCK concur.

---

**22.** Appellant's complaints under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), including lack of pretrial discovery, witness coercion, and Article 13, UCMJ, 10 U.S.C. § 813, violations due to pretrial confinement conditions, are without merit.