UNITED STATES, Appellant

v

RICHARD L. THARP, Fireman Apprentice,
U. S. Navy, Appellee

11 USCMA 467, 29 CMR 283

No. 13,763

Decided May 6, 1960

*Major Ted H. Collins,* USMC, argued the cause for Appellant, United States.
*Captain James T. Warns,* USN, argued the cause for Appellee, Accused.

Opinion of the Court

HOMER FERGUSON, Judge:
Tried by special court-marital, the accused pleaded guilty to three unauthorized absence offenses, in viola-

tion of Uniform Code of Military Justice, Article 86, 10 USC § 886, and not guilty to a charge of larceny, in violation of Code, supra, Article 121, 10 USC § 921, but guilty to the lesser included offense of wrongful appropriation, in violation of the same Article. He was found guilty as charged, and sentenced to bad-conduct discharge, forfeiture of $50.00 per month for six months, and confinement at hard labor for a like period. The convening authority approved the sentence. The supervisory authority reduced the period of confinement and forfeitures adjudged to four months. The board of review set aside the findings of guilty of larceny and reassessed the sentence solely on the basis of the unauthorized absence offenses. Its action was prompted by a belief that certain pretrial statements of the accused were received in evidence in violation of Code, supra, Article 31, 10 USC § 831, and that the effect of the error was in nowise overcome by accused's plea of guilty to the lesser included offense of wrongful appropriation.

The Judge Advocate General of the Navy certified to this Court the questions whether receipt in evidence of accused's statements was prejudicial error concerning the charge of larceny and whether the board of review was correct in refusing to affirm the lesser included offense to which accused pleaded guilty.

The larceny charge involved the theft of a Treasury check belonging to one Kennedy. Kennedy received the check from his disbursing officer, endorsed it, and delivered it with his driver's license to a friend in order that the latter might cash it for him ashore. The friend's attempt to negotiate the check was unsuccessful. He returned it and the license to Kennedy, who placed them in his locker. The items were subsequently taken from the locker without Kennedy's consent.

Several days later, the accused approached a Fireman Price and asked him to cash a check for him, eventually offering him half of its face value

as a service charge. Price became suspicious, as he was aware that Kennedy's check was missing. He refused to cash the check and reported his suspicions to Chief Brackins. Brackins informed Warrant Officer Tucker, accused's division officer, of the matter, and Tucker ordered him to have accused stand by his locker. Mr. Tucker also went to the locker. According to Chief Brackins, the following colloquy occurred:

". . . We went to Tharp's locker and met Mr. Tucker. Mr. Tucker asked him to give us the check and he said, 'What check?' Mr. Tucker then said, 'you know what check I'm talking about.' Tharp said, 'I don't know about any check.' Mr. Tucker said, 'I'm talking about Kennedy's check.' Tharp replied, 'I do not have Kennedy's check.' He then said he had a personal check in his locker and that was the only check he had in his locker."

Mr. Tucker's testimony related the conversation with the accused in the following manner:

"Q: What did Tharp say at this time?
"A: I was questioning Tharp about the check and he gave a conflicting story about the check to the point that I got disgusted with the conversation and I told him to lock his locker.
"Q: In other words he wasn't consistent in what he was . . . telling you?
"A: I do not remember the exact gist of the conversation but it was definitely not clear."

Thereafter, an authorized search of accused's locker was conducted. Kennedy's check and driver's license were discovered in an envelope. When Mr. Tucker picked up the envelope, the accused remarked, "'you've got me.'"

The accused testified as a witness in his own behalf. He admitted possession of Kennedy's check, but denied intending to steal it. He stated he found the items in a trash can and had been undecided concerning the

disposition he should make of them. He was afraid to report the matter, as it might cause him to be suspected of theft.

It is clear that accused's statements to Mr. Tucker, viewed in light of the subsequent discovery of the checks in his locker, were incriminating admissions, for his denials of possession and "conflicting story" permitted an inference that he intended permanently to deprive Kennedy of the instrument. It is equally clear that Mr. Tucker suspected accused of the theft and was required, prior to any interrogation, to advise him of his rights under Code, supra, Article 31. United States v Nowling, 9 USCMA 100, 25 CMR 362; United States v Doyle, 9 USCMA 302, 26 CMR 82; United States v Wilson, 2 USCMA 248, 8 CMR 48. Moreover, the record establishes that Mr. Tucker was accused's military superior. His "asking of a question [of the accused] . . . is the equivalent of a command." United States v Gibson, 3 USCMA 746, 752, 14 CMR 164. Under the circumstances, we are certain the record contains an indication of involuntariness, and it was incumbent upon the prosecution to establish the required predicate for receipt of accused's admissions. United States v Kelley, 7 USCMA 584, 23 CMR 48. Accordingly, it must be concluded that the board of review correctly decided that admission of the incriminatory statements required reversal of accused's conviction of larceny. United States v Williams, 10 USCMA 578, 28 CMR 144; United States v Souder, 11 USCMA 59, 28 CMR 283.

The effect of the erroneous receipt of the statements does not, however, extend to the lesser included offense of wrongful appropriation, to which the accused pleaded guilty, nor is there anything in United States v Williams, supra, which supports such a view. There, as in United States v Wilson and United States v Souder, both supra, we did no more than point out that compelling evidence of guilt will not serve to cure the receipt of statements obtained in violation of Code, supra, Article 31. When an accused judicially confesses an offense, the rule is otherwise, for, in such instance, no particle of harm can result from the admission of his extra-judicial declarations, however obtained. United States v Trojanowski, 5 USCMA 305, 17 CMR 305. The board of review, therefore, erred in dismissing the charge of larceny, rather than ordering a rehearing or reducing the offense found to wrongful appropriation.

The first certified question is answered in the affirmative. The second certified question is answered in the negative. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. The board may approve findings of guilty of wrongful appropriation and reassess the sentence, or direct a rehearing both on the larceny charge and the penalty.

Chief Judge QUINN and Judge LATIMER concur.