UNITED STATES, Appellee

v

LOYD H. BEARCHILD, Specialist Four,
U. S. Army, Appellant

17 USCMA 598, 38 CMR 396

No. 20,913

June 28, 1968

*Captain Anthony F. Cilluffo* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Lieutenant Colonel Martin S. Drucker*.

*Captain William R. Steinmetz* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger*.

## Opinion of the Court

KILDAY, Judge:

Accused was arraigned before a general court-martial convened at Camp Radcliff, Republic of Vietnam, charged with premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. He pleaded not guilty and was found guilty of only unpremeditated murder. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for fifteen years. The convening authority approved the findings and sentence. A board of review in the office of the Judge Advocate General of the Army, in turn, approved only a finding of involuntary manslaughter, in violation of Article 119, Code, supra, 10 USC § 919, and a sentence of dishonorable discharge, total forfeitures, and confinement at hard labor for two years. This Court has granted review to consider two issues which will be hereafter stated.

The events out of which the charge arose have their beginning about 11:45 p.m., October 19, 1966, at the ARVN Compound located adjacent to the 1st Cavalry Division, forward command post at Phu Cat. At that time, the victim, Captain Miller, relieved the accused of his M-16 rifle following a report that the latter had indiscriminately fired the weapon.

Shortly after midnight, a rifle belonging to another soldier was surreptitiously taken from his darkened tent by someone unknown. One of the occupants, however, did hear movement inside. He heard a rifle being picked up and the noise of a clip being inserted. Fifteen minutes later, a burst of automatic fire was heard near the victim's tent. Moments after this, accused appeared in the entrance of his own quarters. Eventually, the stolen rifle, later identified as the murder weapon, was found beside a meat box outside the mess tent. Finally, at 7:00 a.m., October 20, the captain was discovered on the floor of his tent, dead from multiple gunshot wounds.

That same day, accused was questioned by Criminal Investigations Detachment agents and gave an incriminating statement. It was introduced into evidence over objection of defense counsel who contended that accused had not first been properly warned by the

agents of his Article 31 rights or advised as to the meaning of "qualified" counsel, as defined by Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966).

At trial, accused testified on the merits. During direct examination, Bearchild acknowledged he had first acquired another weapon and had then entered the captain's tent in search of his own rifle. While inside, the lights were turned on and someone yelled. Startled by these events, the accused jumped, whereupon the weapon was fired, unintentionally. With this factual summary, we turn to the issues at hand.

To begin with, the Court is asked to decide whether or not the interrogating agent adequately informed accused of his right to counsel prior to the taking of his statement. According to the agent, accused was told:

"I advised him from the notes we had received from the Staff Judge Advocate several months ago. I read from that, it's the first paragraph in the statement. It says that he is entitled to a qualified attorney, may have him present during this interview or anytime he so desires and the interview would be terminated provided he wished counsel at anytime and he verbally said he understood that he had a right to counsel and waived his rights at that time."

Not included was the explanation that if accused could not secure counsel he would be furnished one at Government expense. Moreover, the phrase "qualified attorney" was not further defined. Because of these omissions, the board of review, citing United States v Tempia, 16 USCMA 629, 37 CMR 249; United States v Pearson, 17 USCMA 204, 37 CMR 468; and United States v Hardy, 17 USCMA 100, 37 CMR 364, held it error to admit the statement into evidence. However, under the purported authority of Chapman v California, 386 US 18, 17 L ed 2d 705, 87 S Ct 824 (1967), the inadmissible material was found to be nonprejudicial in nature.

Presently, appellate Government counsel admit the insufficiency of the warning given, it being identical to that held insufficient in United States v Wood, 17 USCMA 257, 38 CMR 55. We, therefore, pursue the question posed no further, for, under circumstances such as these, the concession is proper, well advised, and one that we accept. Cf. United States v Landrum, 17 USCMA 526, 38 CMR 324; United States v Hart, 17 USCMA 524, 38 CMR 322. Accordingly, the first issue is answered in the negative.

There remains, however, the question of whether or not:

The board of review erred to the substantial prejudice of the accused when it found him guilty of the lesser included offense of involuntary manslaughter based on his judicial statement made after the erroneous admission into evidence of a pretrial statement made by him.

Appellate defense counsel contend, contrary to the board of review's interpretation, that Chapman v California, supra, does not invite recourse to the harmless error rule in cases carrying coerced confessions. United States v Westmore, 17 USCMA 406, 38 CMR 204, is similarly cited as authority for the proposition that statements taken in derogation of an accused's constitutional rights are *per se* involuntary. Together, these cases are said to deny the board of review its pre-*Miranda* right to find the existing error harmless; here, because of an in-court declaration by accused amounting "to a judicial confession of involuntary manslaughter by reason of the unlawful killing by the accused's culpable negligence."

Furthermore, appellate defense counsel argue that use of the improperly obtained statement "forced" Bearchild to testify and thus, in effect, his in-court statement is said to be the product of his unwarned declaration. In this connection, we are referred to People v Spencer, 66 Cal 2d 158, 424 P2d 715 (1967), and Killough v United States, 315 F2d 241 (CA DC Cir) (1962).

Appellate Government counsel, in

keeping with the board of review opinion, assert that implicit in Chapman v California, supra, is a recognition of the availability of the rule in cases concerned with the deprivation of constitutional rights. Applying the rule, counsel consider Bearchild's in-court testimony legally sufficient to support a finding of culpable negligence. Further, neither it nor the pretrial statement are said to equal confessions of premeditated murder, the offense originally charged. Indeed, both negate premeditation, says the Government. In light of the reduced findings, the appearance of the accused as a witness is considered a successful trial tactic uninfluenced by the former out-of-court statement. There is, in the eyes of counsel, substantial evidence to support the board of review's finding that admission of the latter was, in fact, harmless.

Miranda v Arizona, supra, contemplates the problem of "custodial interrogations." This, we noted in United States v Tempia, supra, at page 626, entailed "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Thus defined is the character of statements meant to be tested by Miranda-Tempia standards. Cf. United States v Burns, 17 USCMA 39, 37 CMR 303; United States v Hardy, supra; United States v Groover, 17 USCMA 295, 38 CMR 93; United States v Pearson, supra; United States v Gustafson, 17 USCMA 150, 37 CMR 414; United States v Roan, 17 USCMA 163, 37 CMR 427; United States v McCauley, 17 USCMA 81, 37 CMR 345; United States v Wood, 17 USCMA 257, 38 CMR 55; United States v Wolf, 17 USCMA 253, 38 CMR 51; United States v Bollons, 17 USCMA 253, 38 CMR 51; United States v Bosley, 17 USCMA 350, 38 CMR 148; United States v Stanley, 17 USCMA 384, 38 CMR 182. United States v Westmore, supra, is simply a case restricted to instructional omissions related to the voluntariness of a post-Miranda custodial influenced pretrial statement.

This case, too, would be no different from the many referred to above except for the fact that it additionally embraces an in-court testimonial utterance amounting to a judicial confession of involuntary manslaughter by culpable negligence. Such in-court pronouncements are not within the scrutiny of Miranda, having been made willingly, with the consent and in the presence of counsel, during open court and before a judge and other court officers.

In United States v Trojanowski, 5 USCMA 305, 17 CMR 305, this Court held that a judicial confession removed the specter of prejudice arising from the admission of the coerced pretrial statement. Appellate Government counsel correctly allude to both United States v Johnson, 15 USCMA 384, 35 CMR 356, and United States v Tharp, 11 USCMA 467, 29 CMR 283, as reaffirmations of the Trojanowski doctrine. Clearly, on the basis of these authorities, Bearchild's in-court assertion was admissible—overcoming the effect of an improperly admitted extrajudicial revelation. Nevertheless, on June 10, 1968, during the pendency of Bearchild's appeal, the Supreme Court delivered its opinion in Harrison v United States, 36 U. S. Law Week 4549. That opinion, decided after the hearing and arguments on the instant case, in our estimation, controls the result of the issue at hand for we are bound by that holding. United States v Tempia, supra, at page 641.

Harrison was initially tried in the District of Columbia for felony murder. Three confessions were introduced at trial by the prosecution. After their admission, Harrison took the witness stand and gave his own version of the events surrounding the victim's death. Regardless, conviction followed.

The Court of Appeals reversed, finding that Harrison's pretrial confessions had been illegally obtained[1] and were thereby inadmissible in evidence against him. Harrison v United States,

---

[1] Two of the confessions were found to have been obtained in violation of

Mallory v United States, 354 US 449, 1 L ed 2d 1479, 77 S Ct 1356 (1957).

359 F2d 214 (CA DC Cir) (1965), on rehearing *en banc,* 359 F2d 223 (CA DC Cir) (1965).

Upon remand, the accused was then given a second jury trial. On this occasion, the alleged confessions were not utilized. Conversely, Harrison's trial testimony was read to the jury over objection of defense counsel who argued that "the petitioner had been induced to testify at the former trial only because of the introduction against him of the inadmissible confessions." (36 U. S. Law Week 4549.) Again, conviction resulted and the Court of Appeals thereafter affirmed. The Supreme Court, in turn, then granted certiorari to determine whether or not "petitioner's trial testimony was the inadmissible fruit of the illegally procured confessions." (36 U. S. Law Week 4549.)

Answering this question in the affirmative, Mr. Justice Stewart, speaking for the majority, holds that the same principle which prohibits the use of wrongfully procured confessions, "also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor. For the 'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.' *Silverthorne Lumber Co.* v *United States,* 251 US 385, 392." (36 U. S. Law Week 4549.)

The Court of Appeals was said to have erred by relying on the fact that Harrison had " 'made a conscious tactical decision to seek acquittal by taking the stand after [his] in-custody statements had been let in. . . .' The question is not *whether* the petitioner made a knowing decision to testify, but *why.*" (36 U. S. Law Week 4549.)

In short, the conclusion is drawn that if the in-court testimony was given to overcome the impact of █ confessions illegally obtained and improperly introduced, his testimony is tainted and inadmissible for the same reason.

To the question of whether petitioner's trial testimony was, in fact, impelled by prosecution's use of the wrongfully obtained confessions, Mr. Justice Stewart responded:

". . . It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand at his former trial. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would have testified as he did even if his inadmissable confessions had not been used. 'The springs of conduct are subtle and varied,' Mr. Justice Cardozo once observed. 'One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all others.' Having 'released the spring' by using the petitioner's unlawfully obtained confessions against him, the Government must show that its illegal action did not induce his testimony.

"No such showing has been made here. In his opening statement to the jury, defense counsel announced that the petitioner would not testify in his own behalf. Only after his confessions had been admitted in evidence did he take the stand. It thus appears that, but for the use of his confessions, the petitioner might not have testified at all. But even if the petitioner would have decided to testify whether or not his confessions had been used, it does not follow that he would have admitted being at the scene of the crime and holding the gun when the fatal shot was fired. On the contrary, the more natural inference is that no testimonial admission so damaging would have been made if the prosecutor had not already spread the petitioner's confessions before the jury. That is an inference the Government has not dispelled.

"It has not been demonstrated, therefore, that the petitioner's testi-

<hr>

The third was found to have been obtained in violation of a prior *en banc* decision of the Court of Appeals, Har-

ling v United States, 295 F2d 161 (CA DC Cir) (1961).

mony was obtained 'by means sufficiently distinguishable' from the underlying illegality 'to be purged of the primary taint.' *Wong Sun* v *United States,* 371 US 471, 488. Accordingly, the judgment must be *Reversed.*" [36 U. S. Law Week, at page 4550.]

It appears obvious the standards in Harrison v United States, supra, are applicable to the case at hand regardless of the fact that, unlike *Harrison,* this case consists of a single trial proceeding. The "fruit of the poison tree" rule is as applicable to the sequence of events here, *i.e.,* the admission of an improperly obtained pretrial statement and the subsequent in-court testimony of Bearchild, given during the course of but a single jury trial. In either instance, the tainting effect of the invalid upon the valid is the same. Accordingly, the same evidentiary rule should seemingly be applied.

Contrary to the argument of appellate Government counsel in this case, we are not now merely concerned with the testing of the evidence for prejudice. The demands of *Harrison* are more. Above and beyond the arraying of evidentiary matter, the Government is called upon to *affirmatively show* "that its illegal action did not induce his testimony." Indeed, it must dispel the *inference* that no testimonial utterance would have been made had not prosecution already "spread the petitioner's confessions before the jury." (36 U. S. Law Week, at page 4550.) It makes no difference, under such a measurement, that not one scintilla of evidence indicates accused was motivated to testify by the admission of his pretrial revelations or that his trial presentation was no more than a reproduction of what he had earlier revealed to interrogating agents. The simple fact of the matter is that the Government may not satisfy the requirements of *Harrison* by standing on a barren record. Instead they must affirmatively demonstrate the existence of a hiatus—a lack of causal relationship—between that which is illegal and that which would otherwise be tainted thereby.

There being no such showing in this case, we necessarily conclude that Bearchild's in-court statement cannot be used to cure the error arising from the use of his concededly inadmissible pretrial statement. Reversal must follow.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

Harrison v United States, June 10, 1968, 36 U. S. Law Week 4549, ploughs no new ground for this Court. It has long been the rule that an accused who is compelled to testify "to explain away" damaging evidence erroneously admitted over his objection does not by his testimony cure the error. United States v Sessions, 10 USCMA 383, 27 CMR 457. Be that as it may, *Harrison* recognizes that the issue is whether the accused's "trial testimony was in fact impelled by the prosecution's wrongful use of his illegally obtained confessions." *Id.,* at page 4550. There, defense counsel in his opening statement indicated the accused would not testify as to the merits. The record of trial, therefore, indicated, as the Supreme Court held, that "but for the use of his confessions, the petitioner might not have testified at all." Also, the Government's case depended to a large extent upon the pretrial statements. In this case, the accused's testimony on the preliminary issue of admissibility demonstrated that the investigating agents knew more about the circumstances of the offense than he did. As he put it: "[I]t seemed to me that they had known everything right from the start. They knew more than I knew." All that evidence was properly admitted against the accused and it made out a case of premeditated murder without reference to the accused's statement. It is not surprising, therefore, that in this case defense counsel told the court members that, while the accused was charged with premeditated murder, the defense "will establish that during the evening of the 19th Specialist Bearchild

· was so intoxicated that he was unable to form the specific intent or specific design or plan to carry out premeditation in the homicide." That is precisely what the defense did since the court-martial found the accused guilty only of unpremeditated murder.

[1] Since I write in dissent, I am willing to assume that the pretrial statement was inadmissible. However, I must record my grave doubts that in a forward combat area in a foreign country, which is where this interrogation took place, the advice given the accused, and which he swore he understood, did not reasonably mean that the Government would furnish him with free counsel, if he so desired.

In my opinion, the accused's testimony here was not the product of the improperly admitted pretrial statement.[1] Under the circumstances disclosed in this record of trial, I would adhere to United States v Trojanowski, 5 USCMA 305, 17 CMR 305, and affirm the decision of the board of review.