## UNITED STATES

v.

**Specialist Four (E-4) Stephan A. STEED, 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, US Army, Medical Company, 33d Field Hospital, APO New York, 09801.**

### CM 432138.

U. S. Army Court of Military Review.

Sentence Adjudged 3 July 1974.

Decided 28 Nov. 1975.

Appearances: Appellate counsel for the Accused: Travis Mathis, Esquire; CPT Stephen D. Halfhill, JAGC; CPT Gordon R. Denison, JAGC; CPT Lawrence E. Wzorek, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC. Appellate counsel for the United States: CPT Dana C. McCue, JAGC; CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COOK, Judge:

The appellant was found by a trial judge sitting alone, and in spite of his plea to the contrary, guilty of two violations of Article 134, Uniform Code of Military Justice, (10 U.S.C. § 934) as a result of having been discovered in possession of cocaine and marijuana on 12 February 1972. The judge sentenced him, and the convening authority approved, the sentence noted above.

This appeal centers around the legality of the search of the appellant's off-post apartment located in Wurzburg, Germany, participated in by CID agents. The principal question commanding our attention is whether or not there was a proper authorization for the search. We think not.

Appellant's commanding officer, a Captain, was the individual who purported to provide the requisite permission for the contested search. While an unfettered reading of paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition)[1] would lead to a conclusion that this individual was the appropriate source of such a grant, we are not at liberty to take so simple an approach under the circumstances of this case.

The United States Court of Military Appeals has stated that "[t]he question of whether and under what condition a military commander can lawfully authorize an off-post search of a private dwelling in a foreign country is dependent upon international agreement or arrangement between the involved countries, where such exists. This is the expressed teaching of *United States v. Carter,* 16 U.S.C.M.A. 277, 36 C.M.R. 433 (1966)."[2] Additional recogni-

tion of this principal is found in paragraph 2–1a, AR 190–22, 12 June 1970, where it is stated, "When the person or property is located in a foreign country, the commander will authorize a search only when such action is authorized by an international agreement or arrangement with the authorities of the foreign country."

In force in the Federal Republic of Germany on the date of the search of appellant's off-post apartment was the NATO Status of Forces Agreement.[3] Paragraph 10(b), Article VII of that agreement reads:

"Outside these premises, [military camps] such military police shall be employed only subject to arrangements with the authorities, and insofar as such employment is necessary to maintain discipline, and order among the members of the force."

It is in the Commander-in-Chief, United States Army Europes' implementation of this provision that we finally reach the crux in this case. Paragraph 2–1e of USAREUR Suppl 1 to AR 190–22, 16 December 1971, states:

"American military personnel have limited jurisdiction to search economy billets or quarters, whether privately rented by US Forces or leased by the US Forces from private owners. The search of billets or quarters used by US Forces personnel that are not documented for the exclusive use of the US Forces or that are otherwise located outside premises occupied by the US Forces as a result of an international agreement should be under the auspices of and in accordance with the laws of the country in which the property is located. If a search of such billets or quarters is necessary, the appro-

---

1. "The following searches are among those which are lawful: . . . A search of any of the following three kinds which has been authorized upon probable cause by a commanding officer, including an officer in charge, having control over the place where the property or person searched is situated or found or, if that place is not under military control, having control over persons subject to military law or the law of war in that place:

   (1) A search of property owned, used, or occupied by, or in the possession of, a person

   subject to military law or the law of war, the property being situated in a military installation, encampment, or vessel or some other place under military control or situated in occupied territory or a foreign country."

2. *United States v. Mitchell,* 21 U.S.C.M.A. 340, 342, 45 C.M.R. 114, 116 (1972).

3. 6 UST 5601, TIAS 3425, 23 October 1954.

priate civilian police officials will be requested to make the search. The request will not be made unless probable cause exists as required by a above, basic regulation. Even if host country police are to make the search, *authorization must be obtained from one of the officers listed in c above,* this supplement, when the search has been instigated or will be participated in by US authorities. The cooperation of the civilian police officials may be anticipated in such cases because of the obligation of their country under paragraph 6(a), article VII, NATO SOFA, to assist in making investigations and 'in the collection and production of evidence, including the seizure and, in proper cases, the handing over of objects connected with an offense'." [4]

(Emphasis added).

The emphasized portion refers back to an earlier subparagraph which does not include company commanders in its list.[5]

**4.** We note that the United States Court of Military Appeals recognized the binding effect of this paragraph upon the military in its recent opinion in *United States v. Schnell,* 23 U.S.C. M.A. 464, 50 C.M.R. 483, 1 M.J. 94 (1975), footnote 13.

**5.** "Commander's Authorization to Search. c (Added) The following officers may authorize searches, to include seizure of property resulting from such searches of individual and family-type billets and quarters (as distinguished from unit or organization billets and quarters) that are documented for the exclusive use of the US Forces or otherwise occupied by the US Forces as a result of an agreement with the receiving state concerned:

(1) Commander of the support district or support activity in which the property is located.

(2) The community leader, or assistant community leader (USAREUR Reg 10–20), of the area in which the property is located.

(3) The commander exercising special court-martial jurisdiction over the individual concerned.

These officers may delegate to their staff subordinates the authority to authorize search of individual and family-type billets and quarters and the seizure of property resulting from such a search. The officers to whom this authority is delegated will be of field grade or higher who are experienced, reliable, and normally available (e. g., deputy commanders, executive officers, adjutants) but should not be the staff judge advocates or provost marshals."

It is the plain holding of *United States v. Mitchell, supra,* that whenever a provision implementing a treaty specifies how overseas searches are to be conducted such provisions must be followed, and searches in derogation thereof are unauthorized.[6] The search in the instant case was conducted under the auspices of one not permitted to authorize the same.

Consequently, the search was illegal and the resultant admission of the evidence obtained was improper.[7]

The findings of guilty must be disapproved as they rest solely on the basis of the illegally obtained evidence.[8]

The findings of guilty and the sentence are set aside and the charges are dismissed.

Senior Judge BAILEY and Judge MITCHELL concur.

**6.** Although we chose this rationale to find this search unauthorized, the same result might very well have been supported by the legal requirement that the government must abide by its own regulations. *United States v. Russo,* 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975).

**7.** *United States v. Taylor,* 21 U.S.C.M.A. 343, 45 C.M.R. 117 (1972); *United States v. Gionet,* 41 C.M.R. 519 (A.C.M.R. 1969); *United States v. Crawford,* 41 C.M.R. 649 (A.C.M.R. 1969); *United States v. Lange,* 15 U.S.C.M.A. 486, 35 C.M.R. 458 (1965).

**8.** We are not unaware that the appellant made incriminating in-court statements in regard to the "possession [of] traces of marijuana" specification. However, we have concluded that this testimony was impelled by the erroneous admission of the illegally obtained evidence and are applying the "Bearchild Rule" to hold it inadmissible. *United States v. Bearchild,* 17 U.S.C.M.A. 598, 38 C.M.R. 396 (1968); *United States v. Turner,* 39 C.M.R. 741 (A.B.R. 1968); *United States v. Sullivan,* 39 C.M.R. 770 (A.B.R. 1968); *United States v. Surenian,* 41 C.M.R. 963 (A.F.C.M.R. 1970); *United States v. Starr,* 49 C.M.R. 508 (A.F.C.M.R. 1974); *but see United States v. Mueller,* 42 C.M.R. 986 (A.F.C.M.R. 1970); *United States v. Bacon,* 47 C.M.R. 820 (N.C.R. 1973). We distinguish *United States v. Ghee,* 46 C.M.R. 664 (A.C.M.R. 1972), on its facts.