## UNITED STATES

### v.

Private E-1 Timothy J. HOFBAUER, 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, U. S. Army, Company C, 3d Battalion, 5th Advanced Individual Training Brigade (Combat Support), U. S. Army Training Center, Fort Dix, New Jersey.

### CM 432540.

U. S. Army Court of Military Review.

Sentence Adjudged 4 Aug. 1974.

Decided 1 July 1976.

---

Appellate Counsel for the Accused: CPT John M. Nolan, JAGC; CPT Michael R. Caryl, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC.

Appellate Counsel for the United States: CPT Richard A. Gallivan, JAGC; CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

O'DONNELL, Judge:

This case involves an almost unbelievably bizarre incident that resulted in all too believable consequences. Late on the night of 27–28 April 1974, two soldiers, Private Lonnie Eaton and Private Thomas White, were returning to Fort Dix after an evening in nearby Wrightstown, New Jersey. As they came upon the military reservation, they detected the odor of marihuana and ob-served three soldiers smoking in a nearby wooded area. These three soldiers, Private James Jones, Private Terry Bailey, and the appellant, Private Timothy Hofbauer, had likewise just returned from Wrightstown.

For some reason not entirely apparent from the testimony adduced at trial, White and Eaton decided to play a joke on the three soldiers. They approached the group, claimed to be CID agents, and directed them to throw away the marihuana. White told Eaton to "call the man." As Eaton ostensibly began to comply, White called him back. White then asked the three soldiers why they refused to throw away their marihuana. They replied that it was all consumed. White again directed Eaton to "call the man." At this point, someone yelled, "let's get them," and a fight broke out. Both White and Eaton sustained stab wounds. White survived. Eaton did not.

As a result of this incident Jones, Bailey and Hofbauer were tried by general court-martial. Jones was tried separately and convicted of murdering Eaton and assaulting White. Bailey and Hofbauer were tried at a common trial. Bailey was acquitted outright. Hofbauer was acquitted of murdering Eaton, found guilty of aggravated assault against White, and was sentenced to a bad-conduct discharge, forfeiture of all pay and allowances and confinement at hard labor for one year. The convening authority approved the sentence.

The evidence clearly proves that the stab wounds received by White were inflicted by Jones. The appellant in this case was convicted on a theory of aiding and abetting. The evidence offered in support of this theory is sparse, consisting essentially of testimony by White, a pretrial statement of the appellant and the in-court testimony of the appellant. White could not specifically identify any of the three persons involved in the fight with him and Eaton. The only evidence placing the appellant at the scene of the incident is his pretrial statement and his in-court testimony. The appellant objected to the admissibility of this statement and stated through counsel that he was testifying at trial only to overcome the ad-

verse effect of the alleged inadmissible statement.[1]

At trial, counsel for the appellant contended that the statement was inadmissible, among other reasons, because the person taking the statement did not advise the appellant in accordance with Article 31 of the Code, 10 U.S.C. § 831 and failed to inform him that he could request to be represented by a specific military counsel if reasonably available. The statement in question was taken on 15 May 1974 by Mr. Fitz Orman Clarke, a special agent of the Federal Bureau of Investigation. Before taking the statement, Agent Clarke first informed the appellant of the nature of the investigation and then read to him from a standard form used by FBI agents. The pertinent portions of the form are set forth in the margin.[2] Mr. Clarke adapted the form to the military milieu by orally advising the appellant that if he could not afford a lawyer, a military attorney would be provided for him.

The appellant's theory of inadmissibility is based on two premises: Agent Clarke was in effect acting as an agent of the military and therefore was required to follow Article 31 and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967); and Agent Clarke's advice, although adequate under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), fell short of the more stringent requirements of Article 31 and *Tempia.* We disagree on both counts.

 It is true, as contended by the appellant, that a civilian investigator who is acting for the military is required to advise a suspect in accordance with Article 31 and of his rights to counsel before taking a statement from him. *See United States v. Penn,* 18 U.S.C.M.A. 194, 39 C.M.R. 194 (1969), *United States v. Lewis,* 18 U.S.C.M.A. 355, 40 C.M.R. 67 (1969). The evidence at trial, however, clearly shows that Agent Clarke was acting on behalf of the federal Government and not as an agent of the military. *See United States v. Penn,* 18 U.S.C.M.A. at 199, 39 C.M.R. at 199.

Clarke testified that he entered the case pursuant to a memorandum of understanding between the Department of Defense and the Department of Justice because he and the military investigators believed at the time that civilians may have been involved in the incident.[3] As he was conducting an independent investigation, Agent Clarke was required only to follow the procedures mandated by *Miranda,* which he assuredly did.[4]

 Even assuming *arguendo* that Agent Clarke was acting for the military the re-

---

1. If the confession is determined to be inadmissible, the in-court testimony, under these circumstances, will likewise be inadmissible. *United States v. Bearchild,* 17 U.S.C.M.A. 598, 38 C.M.R. 396 (1968).

2. "Before we ask you any questions, you must understand your rights.

 You have the right to remain silent.

 Anything you say can be used against you in Court.

 You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

 If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

 If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

3. The memorandum of understanding, which is dated 19 July 1955, is reproduced in Army Regulation 27–10, 26 November 1968, at Chapter 7. It provides, with exceptions not here pertinent, that the Federal Bureau of Investigation shall investigate any serious crime committed on a military reservation within its investigative authority if, *inter alia,* it appears that civilians may be involved as principals or accessories. Murder and attempted murder on a military reservation are federal offenses and, therefore, are within the investigative authority of the Bureau. 18 U.S.C. §§ 1111, 1113.

4. *Miranda* provides pertinently: Before a person in custody may be interrogated, he must be informed "in clear and unequivocal terms that he has the right to remain silent"; that "anything said can and will be used against [him] in court"; that "he has the right to consult with a lawyer and to have the lawyer with him during interrogation"; and that "if he is indigent a lawyer will be appointed to represent him." 384 U.S. at 467–73, 86 S.Ct. at 1624–1627.

sult is the same, as we find that the appellant was advised in accordance with military law. Although Clarke did not read Article 31 verbatim to the appellant, his warning did cover the salient aspects.[5] As to the question of right to counsel, the appellant is laboring under a misapprehension. The advice required under military law is, like its civilian counterpart, couched in terms of indigency. As the Court of Military Appeals held in *United States v. Clark*, 22 U.S.C.M.A. 570, 48 C.M.R. 77 (1973):

> "In *Tempia*, this Court did no more than to adopt the warning requirements as to counsel set out by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966). The right to appointed counsel prescribed as a part of the *Miranda* warning is indisputably conditioned upon the accused's inability to retain private counsel."

Although the Court did not so specify, it seems reasonable to conclude that in that event the appointed counsel would be military. As Agent Clarke advised the appellant in accordance with these principles, the demands of *Tempia*, as well as those of Article 31, were met.[6]

For these reasons, we find that the military judge correctly received the appellant's statement in evidence. Likewise, the military judge properly considered the appellant's in-court testimony. *United States v. Bearchild*, 17 U.S.C.M.A. 598, 38 C.M.R. 396 (1968).

■ The appellant next contends that the evidence is insufficient to sustain the findings of guilty. He was convicted on a theory of aiding and abetting. The principal prosecution witness was Private White, the surviving victim. As noted above, White could not identify any of the persons involved in the incident. He was, however, able to describe the actors in such a manner that we can deduce certain significant facts.

A summary of White's testimony concerning the fight follows. Just before the fight broke out, the three soldiers were sitting on the ground with White and Eaton standing in front of them. The soldier sitting on the right, as White faced him, was dressed in blue jean trousers and a blue jean jacket. The one sitting in the middle was dressed in blue jean trousers and a beige or light brown jacket. The person on the far left had blue jean trousers and a red checkered vest. Suddenly the person in the middle shouted, "let's get them," lunged at White and grabbed him by the legs. The person in the blue jean jacket pulled White's coat over his head and stabbed him in the right side. The third soldier, as far as White was concerned, took no part in this scuffle. After the attack, White chased the person who stabbed him. As White stopped to pick up a handful of gravel, the other person turned and started back toward White. At this point someone came out of the bushes and struck White. The person in the blue jean jacket then caught up with White and stabbed him a second time.

The appellant, from his testimony and from his pretrial statement, placed himself at the scene of the crime and identified Jones as the person who stabbed White. However, he sought to minimize his own involvement. He stated that White appeared to be ready to swing at them when Jones jumped up and swung at White. He testified that he also stood up and swung at White but missed. The appellant stated that he was hit by someone, presumably White, and fell to the ground; he got up, ran away and took no further part in the

---

**5.** Article 31(b) provides: "No person subject to [the Code] may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

**6.** The current military practice, at least in the Army, is to advise a suspect of his rights to military counsel without regard to the financial means of the suspect. *See* Appendix C, Army Regulation 190–30, 7 November 1973 (effective 1 January 1974).

fracas. The appellant denied holding White while he was stabbed and denied knowing that Jones had a knife until the fight was over.

The above discrepancies notwithstanding, certain facts emerge from the testimony of both White and the appellant. The appellant and Jones were sitting next to each other and together engaged in a fight with White; Jones was the person dressed in the blue jean jacket and the one who stabbed White; Bailey took no part in the fight either as an active perpetrator or an aider and abettor. The only remaining question, aside from questions relating to credibility, is the identity of the person or persons who initially grabbed White by the legs and later hit him just before the second stabbing. Although we cannot determine with reasonable certainty the identity of the person who hit White just before the second stabbing, we are convinced beyond a reasonable doubt that appellant was the one who grabbed White by the legs, thereby aiding and abetting Jones in his attack. We are not satisfied beyond a reasonable doubt, however, that appellant had the specific intent required for a finding of aggravated assault. In our opinion the evidence supports only a finding that appellant shared the intent or purpose to commit an assault consummated by a battery. *See United States v. Jackson*, 6 U.S.C.M.A. 193, 207–8, 19 C.M.R. 319, 333–4 (1955).

In arriving at these conclusions, we have not overlooked the question of White's credibility. During his testimony, White admitted lying to the criminal investigators concerning some of the collateral events in question. White explained that he had so misinformed the investigators to cover up some earlier activities of his own that evening. Apparently, White and others had sold several bags of ordinary lawn grass representing it to be marihuana. There is no question that White lied to the criminal

investigators and to that extent his credibility is diminished. Nonetheless, we are convinced that he testified truthfully as to the essential events surrounding the attack.

▬ One further matter requires discussion. During the prosecutor's final argument on findings, Private Eaton's wife stood up and cried out, "they did it; they killed him; they're guilty," or words to that effect.[7] The trial counsel paused momentarily and continued with his argument. The military judge said nothing. The appellant contends that the judge erred to his prejudice by failing to take appropriate remedial action, such as instructing the court members to disregard the outburst or declaring a mistrial. We find no fair risk that the appellant was prejudiced by the outburst. The remark was made by a spectator and was not interjected by any party to the trial. It obviously had no effect on the proceedings as both accused were acquitted of killing Private Eaton. The military judge did not abuse his discretion by failing to comment or take some other action. *See State v. Spears*, 76 Wyo. 82, 300 P.2d 551 (1972).

Only so much of the findings of guilty of Charge II and its specification is affirmed as finds that the appellant did, at the time and place alleged, by unlawfully grabbing Private E–2 Thomas Edward White, Jr. by the legs, aid and abet Private James Jones in unlawfully striking the said Private White on the chest with his fist. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms only so much of the sentence as provides for confinement at hard labor for six months and forfeiture of $250.00 pay per month for six months.

Senior Judge JONES and Judge FELDER concur.

---

7. This matter was not made a part of the verbatim transcript but was brought to our attention by several affidavits. While it might be argued, as does the trial counsel in his affidavit, that such outbursts are not required to be transcribed as they were not uttered by any party in interest, the better practice is to include such matters when they might have an impact on the proceedings.