**UNITED STATES, Appellee,**

v.

**Specialist Four Gilbert J. MARTINEZ, SSN 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, United States Army, Appellant.**

**CM 436682.**

U. S. Army Court of Military Review.

31 Oct. 1978.

---

Captain Allan T. Downen, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Larry D. Anderson, JAGC.

Captain Stephen P. Henderson, JAGC, argued the case for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Major Michael B. Kennett, JAGC, and Captain Richard A. Kirby, JAGC.

Before DRIBBEN, TALIAFERRO and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

DRIBBEN, Judge:

Appellant was convicted, contrary to his pleas, by a general court-martial, of two specifications of assault with a dangerous weapon alleged as violations of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928. His sentence, imposed by the court members and approved by the convening authority, extended to a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The question we must resolve is whether appellant's pretrial statement in which he admitted the second incident of stabbing a fellow soldier was properly admitted into evidence.

### I

This case comes to us on the following undisputed facts. Sometime between 2110 and 2140 hours, 24 May 1977, appellant had an argument in the barracks at Kirch-Goens, Germany, with Private Glenn. He lunged at Private Glenn with a "buck" knife and during a brief scuffle cut the latter on the arm and back. Later that same evening, appellant joined an affray outside the barracks involving [some] thirty to forty service members. While allegedly acting as a peace maker, the appellant was cut on the leg. Upon realizing he had been cut and thinking that Private Nance standing nearby had stabbed him, Specialist Martinez stabbed Nance in the back.

Appellant returned to the barracks and was transported to the dispensary for treatment of his leg wound. After again returning to his barracks he was summoned to the Butzbach military police station where he arrived at about 2300 hours. Specialist Martinez was briefly interviewed by an unidentified military policeman and sent back to his barracks in Kirch-Goens about 0230 hours the next day, 25 May. He was immediately restricted to the billets by his company commander. At about 0345 hours, appellant was again taken to the same military police station, arriving there at 0405 hours. Appellant, advised of his Article 31, UCMJ[1] and *Miranda-Tempia*[2] rights by Special Agent Moses, refused to answer questions and requested a lawyer. The interview was immediately terminated and once again appellant was returned to his barracks. He rested on his bed but could not sleep due to the pain in his leg. Appellant was subsequently summoned to his unit orderly room at approximately 1000 hours, 25 May. He was there advised of his rights by Special Agent Mungle who wanted to question him about the Glenn incident. Once more appellant declined to answer questions and again requested a lawyer. Although Agent Mungle terminated the interview, his fellow Special Agent, Mr. Yarnell, immediately thereafter questioned Martinez about the cut on his leg. Mr. Yarnell, who had witnessed Agent Mungle's interview and was thereby made aware of appellant's request for a lawyer, did not advise Martinez of his rights because he was interviewing him as a victim. After his wound was photographed, appellant was released at about 1040 hours to return to another barracks room having been told he could not return to his own room for the time being.

The agents investigating the outside affray had a "note comparing" conference at approximately 1200 hours, 25 May. After receiving information indicating that appellant had cut Glenn with a knife earlier on the same evening, and after examining the leg wound suffered by appellant during the subsequent affray, Special Agent Yarnell thought it possible that appellant could have cut himself with his knife while participating in the melee. Mr. Yarnell also knew that Private Nance had been stabbed during the affray and that Nance's description of his assailant was similar in some respects to appellant's appearance. Accord-

---

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

ingly, Yarnell determined that appellant was a suspect in the Nance stabbing and should be questioned further.

At approximately 1345 hours, 25 May, appellant was once more called to the orderly room. Special Agent Yarnell told him that he was suspected of stabbing Nance and advised him of his *Miranda-Tempia, supra,* rights to silence and counsel. Mr. Yarnell told appellant that he would not ask any questions about the Glenn incident. Appellant indicated that he did not wish to consult with an attorney and that he would discuss the matter. To the best of Yarnell's knowledge, appellant was not then represented by counsel, nor had he spoken to any attorney about this matter. After some preliminary discussion, appellant asked to speak to his company commander before "he went into any more statements."

Appellant's unit commander, Captain Woods, was summoned and informed by Yarnell that appellant wanted to speak with him prior to making a statement about the Nance incident. Captain Woods and appellant spoke privately for approximately 10 to 20 minutes. Captain Woods did not advise appellant of his rights to silence and counsel. Appellant asked if he should make a statement. Captain Woods replied that he should not admit to anything he had not done, but that it was important to tell the truth. Appellant indicated he was ready to make a statement but did not discuss the affray with Captain Woods.

Captain Woods informed Yarnell that appellant was willing to discuss the incident. Mr. Yarnell again advised appellant of his rights to silence and counsel. Appellant indicated he understood, did not want a lawyer, and would talk about the Nance assault. Mr. Yarnell then took appellant's sworn statement in which he admitted stabbing Nance because he thought Nance was responsible for his leg injury. No testimony was introduced reflecting that anyone sought to notify an attorney that appellant desired counsel even though he had made two previous requests for counsel. It may be judicially noticed that 24 and 25 May 1977 fell on Tuesday and Wednesday, respectively.

Appellant testified at an Article 39(a) UCMJ, 10 U.S.C. § 839(a) session that he twice waived his rights to silence and counsel during the Yarnell investigation because he had not slept all day and was tired, because Yarnell had told him "I know who did it" and that it was best to "get this investigation over," and that "the investigation would last a little bit longer than it was supposed to." Appellant further explained to the trial judge that he gave up his right to talk to a lawyer:

> Because they kept bothering me and I was tired. I knew they were gonna come over there and call me again because he told me that the investigation wouldn't stop until he found out what had really happened. They kept telling me I know—that I know what happened and I just didn't want to tell them.

In denying appellant's motion for appropriate relief by suppressing his incriminatory statement, the trial judge specifically found that appellant "did not indicate to any government agent at any time after about 1330–1345 hours . . . that he wanted a lawyer nor did he indicate that he did not want to answer questions." The trial judge further found that appellant "was not questioned by Captain Woods concerning any alleged offense nor did he make any statement to Captain Woods concerning any of the alleged [24 May] offenses."

## II

Appellant contends that the failure to honor his requests for counsel rendered his subsequent incriminating statement wherein he admitted stabbing Private Nance inadmissible at trial.

██ The decisions of the United States Supreme Court in *Miranda v. Arizona, supra,* and the United States Court of Military Appeals in *United States v. Tempia, supra,* require questioning to stop until an attorney is present when one is requested by a suspect undergoing custodial interrogation. Although the request for counsel

does not forever thereafter bar further questioning at a subsequent interview, the government has a heavy burden of establishing that an accused voluntarily waived his right to counsel and to have counsel present at a subsequent interview. *United States v. Hill*, 5 M.J. 114 (CMA 1978); *United States v. Mosely*, 23 U.S.C.M.A. 88, 48 C.M.R. 596 (1974); *accord United States v. Solomon*, 17 U.S.C.M.A. 262, 38 C.M.R. 60 (1967); *see also United States v. Rothrock*, 3 M.J. 776 (A.C.M.R. 1977); *United States v. McLellan*, 1 M.J. 575 (A.C.M.R. 1975).[3] We do not believe the Government met its burden in this case. The appellant was interrogated three times during the early morning hours and twice requested counsel. None was forthcoming. Mr. Yarnell was present at one of these interviews and was well aware of appellant's exercise of his right to counsel. Mr. Yarnell investigated a crime closely related in time and place, if not also in *modus operandi* to appellant's earlier assault on Private Glenn. Mr. Yarnell testified that it was the use of a knife by Martinez in the Glenn incident which led him to suspect appellant was the perpetrator of the stabbing assault on Nance. These incidents are too close in time, place, and manner of acting to provide sufficient support to the conclusion of the trial judge that Martinez voluntarily waived his constitutional rights relating to the stabbing of Private Nance. On this record it appears that appellant could and did reasonably and readily conclude that his requests for counsel were not going to be honored. The government's contention that appellant made no effort to obtain a lawyer for himself fails to persuade us otherwise. Appellant was hurt, tired and under close restriction when he was not undergoing custodial interrogation. Under these circumstances we decline to impose additional obligations upon him to get an attorney. He exercised his rights and those in authority who had the opportunity and the know-how to obtain counsel for him failed to act. Appel-

lant's request to speak with his unit commander when confronted as a suspect in the Nance episode after having twice unsuccessfully sought an attorney is consistent with a belief that further requests for counsel would be useless.

The case of *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) is of no avail to support the admission into evidence of appellant's incriminating statement. While the majority of the Justices of the United States Supreme Court held that a pretrial statement was properly admitted into evidence although the accused had previously exercised his right to remain silent, Mr. Justice Stewart, author of the principal opinion observed that Detective Hill ". . . focused exclusively on the Leroy Williams homicide, a crime different in nature and in time and place of occurrence from the robberies for which Mosely had been arrested and interrogated by Detective Cowie." *Michigan v. Mosley, supra*, at 105, 96 S.Ct. at 327.[4]

In our determination that appellant's will was overborne in this case, we have assessed the totality of all the surrounding circumstances—the characteristics of the accused, the details of the interrogations and the failure by those who had the opportunity to seek counsel for the accused when he twice so requested. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

### III

Appellant's testimony at his trial that he stabbed Nance in self-defense does not, as the Government argues, constitute an exercise of free will sufficient to dissipate the original taint of the improperly admitted statement. To the contrary we believe that appellant's testimony claiming self-defense was impelled by the statement improperly procured by the Government and erroneously admitted into evidence by the trial judge. *See United States v. Bear-*

---

3. Since appellant was not represented by counsel, neither *United States v. Lowry*, 2 M.J. 55 (C.M.A. 1977) nor *United States v. McOmber*, 1 M.J. 380 (C.M.A. 1976) are controlling.

4. There was a period of two or perhaps more months between Mosely's offenses.

*child*, 17 U.S.C.M.A. 598, 38 C.M.R. 396 (1968). The case of *United States v. DeWitt*, 3 M.J. 455 (C.M.A. 1977) fails to support the Government's argument. Judge Perry, the author judge therein, refuses to apply the doctrine of *Bearchild, supra*, and *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) to instances where there is no primary illegality on the part of the Government's investigators. That is not the situation in the case at bar.

Another case cited by the Government in support of its argument concerning the appellant's testimony relating to self-defense is *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). The majority of the Supreme Court Justices refused to apply the exclusionary rule [5] to the testimony of a willing witness where the degree of attenuation between an illegal search and the witness' testimony was sufficient to dissipate the connection between the search and the testimony. Mr. Justice Rehnquist writing for the majority pointed out that application of exclusionary rule therein would not have had the slightest effect on the behavior of the officer who inadvertently conducted the illegal search by merely examining an envelope containing policy slips and money lying on a store counter and thereafter asking an employee, who willingly testified in Ceccolini's trial, to whom the envelope belonged. He wrote that the cost of silencing this witness was too great for an even handed law enforcement to bear in order to secure such a speculative and very likely negligible effect. *United States v. Ceccolini, supra*, at 280, 98 S.Ct. 1054.

In the case at bar our application of the exclusionary rule will, we believe, have an appropriate effect upon the behavior of those in authority who through either neglect or willful misbehavior would not effectuate an accused's or suspect's exercise of his right to counsel.

■ The charge that we set aside is an assault by the appellant upon a fellow soldier that occurred during a melee on 24 May 1977 at a military installation in Germany. The victim could not identify the appellant as his assailant at the trial held on 6 and 7 September 1977. We have determined that his pretrial statement was inadmissible and that it impelled the appellant to claim self-defense. Absent an incriminating · statement by the appellant, there is insufficient independent evidence to support a conviction. A rehearing may not be ordered in a case if proof of guilt consisted of inadmissible evidence for which there is not available an admissible substitute. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 92 *a*.

■ The finding of guilty of Specification 1 of the charge is set aside. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for one year, forfeiture of $100.00 per month for 12 months, and reduction to the lowest enlisted grade.

Judge TALIAFERRO and Judge FELDER concur.

---

5. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).